S91G0043. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. BOSWELL.
(405 SE2d 869)

BELL, Justice.

In *Boswell v. MARTA*, 196 Ga. App. 902 (397 SE2d 165) (1990), the Court of Appeals held that in a tort suit the Metropolitan Atlanta Rapid Transit Authority (MARTA) may be held liable for punitive damages as well as compensatory damages. Id. at 903. The Court of Appeals based the holding on its finding that the legislation creating MARTA, Ga. L. 1965, pp. 2243, 2275, Sec. 22, as amended by Ga. L. 1971, pp. 2092, 2102 (hereafter, the MARTA Act), authorizes the imposition of punitive damages in MARTA's capacity as a tortfeasor. Id. at 902-903. Because we find that, as a matter of law, an award of punitive damages against MARTA would violate public policy, we reverse the judgment of the Court of Appeals.

This case arose when a passenger on a MARTA train, plaintiff Boswell, suffered injuries from a criminal attack while at a MARTA station. He sued MARTA for compensatory and punitive damages, and moved for partial summary judgment on whether MARTA could be held liable for punitive damages. The Court of Appeals reversed the trial court's denial of his motion, holding that the MARTA Act operates in tort suits to waive MARTA's immunity from punitive damages as well as compensatory damages. *Boswell,* supra, 196 Ga. App. at 903.

We find that public policy demands that MARTA not be subject to awards of punitive damages, since such awards would seriously damage the public interest. The issue whether an award of punitive damages in a suit against a governmental entity violates public policy was discussed by the United States Supreme Court in *City of Newport v. Fact Concerts,* 453 U. S. 247 (101 SC 2748, 69 LE2d 616)

(1981), as follows:

> In general, courts [have] viewed punitive damages as contrary to sound public policy, because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised. [Id. at 263.]
>
> . . .
>
> [A]n award of punitive damages against a [governmental entity] "punishes" only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. Thus, there is no question here of equitably distributing the losses resulting from official misconduct. [Cit.] Indeed, punitive damages imposed on a [governmental entity] are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers. [Fn. omitted.]
>
> Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct. If a government official acts knowingly and maliciously to [injure others], he may become the appropriate object of the community's vindictive sentiments. [Cits.] A [governmental entity], however, can have no malice independent of the malice of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity itself. [Emphasis in original.] [Id. at 267.]

The expression of public policy articulated in *City of Newport* is in accordance with the public policy of Georgia.[1] We hold that an award of punitive damages against MARTA would violate the public policy of Georgia, and therefore is impermissible as a matter of law.

*Judgment reversed. All the Justices concur, except Smith, P. J., who dissents.*

---

[1] Compare *City of Columbus v. Myszka*, 246 Ga. 571, 572-573 (4) (272 SE2d 302) (1980), in which this Court held that "absent statutory authority, a *municipality* cannot be held liable for punitive damages."

We note that *MARTA v. Binns*, 252 Ga. 289 (313 SE2d 104) (1984), is distinguishable, as in that case MARTA had voluntarily assumed liability for punitive damages in its capacity as a no-fault insurer.

SMITH, Presiding Justice, dissenting.

I dissent. The majority totally disregards the express language and the policy of the Legislature as plainly stated in the MARTA Act, (Ga. L. 1965, pp. 2243, 2275, Sec. 22, as amended by Ga. L. 1971, pp. 2091, 2102), disregards important language contained in *MARTA v. Binns*, 252 Ga. 289 (313 SE2d 104) (1984), nullifies the express language of Section 22 of the MARTA Act, supra, and instead, infers an inappropriate substantive due process analysis cloaked in an irresponsible public policy rationale.

The language of the MARTA Act is clear. Ga. L. 1965, Sec. 22, supra at 2275, provides:

> The Authority shall not enjoy governmental immunity from tort liability, but shall be liable therefor *as any private corporation* except that no execution shall be levied on any property of the Authority prior to ninety (90) days from the date of a final judgment against the Authority. The Authority shall contract for adequate insurance, indemnification or similar protection *against any loss, liability, or other risk, hazard or responsibility* to which it may be exposed or which it may accept on account of its property, personnel, or operations. (Emphases supplied.)

Corporations *are* liable for punitive damages. See OCGA § 51-12-5.1. MARTA is liable for punitive damages unless, of course punitive damages are no longer available for torts committed by private corporations. In *Binns*, supra, this Court upheld an award of punitive damages against MARTA as a self-insurer. In that case we also said,

> . . . that in enacting Section 22 of the MARTA act [sic], quoted above, the General Assembly intended to subject MARTA to tort liability and to require MARTA to obtain the necessary insurance to cover *any* potential liability or other claims against it. . . . When it was authorized by the 1971 amendment of the MARTA Act to act as self-insurer, MARTA *was not authorized to thereby limit its liability*. *Binns*, supra at 291. (Emphases supplied.)

The majority gets the cart before the horse. When presented with a question such as the one before us, we should: 1) look to see if a state law controls; 2) if such a law applies, as it does here, we should construe the statute only if it is ambiguous;[2] and 3) we should begin

---

[2] "[W]here the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden." *City of Jesup v. Bennett*, 226 Ga. 606, 609 (176 SE2d 81)

our construction with the presumption that the statute is valid and constitutional[3] and construe the statute, if possible, so as to uphold the statute in full.[4] Given a clear statute, such as Sec. 22 of the MARTA Act, our function is to apply it, not to trample it.

The majority opinion leapfrogs proper analysis, blindly ignores the plain words of a statute, and is the most blatant example of judicial legislating that I have ever seen. The majority does not even attempt to hide its total disregard of the language and the public policy clearly established by the Legislature in the MARTA Act. In the process the majority fails to explain how its public policy rationale can supersede the clear language and legislative intent of the statute. When the Act was passed in 1965, there were 205 members in the Georgia House of Representatives and 54 members of the Georgia Senate. Now six members of this Court deign to substitute their judgment for that of 259 elected representatives.

The majority quotes from *City of Newport v. Fact Concerts*, 453 U. S. 247 (101 SC 2748, 69 LE2d 616) (1981). *City of Newport*, in addition to being a non-binding federal case, is clearly distinguishable. It involved a construction of a federal statute, 14 USC § 1983, which, "was designed to expose state and local officials to a new form of liability." *City of Newport*, supra at 259. In contrast, the MARTA Act defines MARTA as a "public body corporate" subject to tort liability, as *"any private corporation."* MARTA Act, supra at 2246, 2275. The liability involved here is not a "new form of liability." More importantly, as noted above, this Court has never shown that the language of, or policy behind, Sec. 22 of the MARTA Act is ambiguous and subject to a redefinition.

Today's decision is high-handed and usurps the power of the General Assembly. This Court has never condoned using a federal court case to set Georgia public policy when no United States Constitutional question is involved. Nowhere does our Constitution or Code intimate that the courts shall run roughshod over a duly enacted

---

(1970). This applies to this case.

  [3] OCGA § 1- 3- 1 (a) provides:
  In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy. . . .
"A statute is presumed to be valid and constitutional until the contrary appears. . . ." *Williams v. Ragsdale*, 205 Ga. 274, 277 (53 SE2d 339) (1949). "An Act of the General Assembly carries a strong presumption of constitutionality, and therefore should not be set aside unless it 'plainly and palpably' conflicts with a constitutional provision." *City of Atlanta v. MARTA*, 636 F2d 1084 (5th Cir. 1981).
  [4] " 'It is the duty of courts, to put such a construction upon statutes, if possible, as to uphold them and carry them into effect.' " *Lamons v. Yarbrough*, 206 Ga. 50 (55 SE2d 551) (1949). "That construction which will uphold a statute in whole and in every part is to be preferred." *Exum v. City of Valdosta*, 246 Ga. 169 (1) (269 SE2d 441) (1980).

Georgia statute in order to pursue a statement of public policy espoused in a federal statutory construction case. It is this Court's duty to sustain a statute's constitutionality, if possible, not to hunt a way to abolish it.

In our system of government, the Legislature is the primary arbiter of public policy, because it is nearer to the people and can amend the laws to reflect the people's will. As noted above, we presume that a duly enacted statute is valid. This presumption extends to the public policy behind the enactment of the statute.

Allowing a party to seek punitive damages is sound public policy. Punitive damages are for the purposes of deterrence and punishment. OCGA § 51-12-5.1 (a). They give notice to the wrongdoer that it must cease and desist from wrongful conduct or suffer the consequences. In this instance, punitive damages would give notice to the taxpayers and riders of MARTA of the deficiencies in the management of MARTA. Because MARTA is partially funded by taxpayers, the majority reasons that punitive damages would not affect the decision-makers, and the real wrongdoers would not be deterred.[5] To say that punitive damages will not deter MARTA officials ignores fundamental notions of accountability in government and business. While I agree with the majority that punitive damages affect profit and losses, I do not agree that they are not a proper deterrent. MARTA is a business, keeps financial statements and must report adverse judgments. When such a judgment is awarded, negative public attention is focused upon the culpable MARTA officials; the media publish the award for the public's inspection. The public scrutinizes MARTA just

---

[5] Some commentators argue that allowing punitive damages here amounts to a substantive due process violation under *Davis v. City of Peachtree City*, 251 Ga. 219 (304 SE2d 701) (1983). I disagree. While *Davis* is an excellent analysis of substantive due process, it is readily distinguishable from our case. *Davis* dealt with a Peachtree City ordinance which made a holder of a city liquor license subject to vicarious criminal liability "for the conduct or actions of his employees while in his employment." *Davis*, supra at 219. Mr. Davis was found guilty of selling alcoholic beverages to a minor when an employee in one of his stores sold wine to an under-age customer. It was undisputed that Mr. Davis had no knowledge and did not authorize the sale. The commentators urge, and the majority implies that, like the stated policy of the ordinance in *Davis*, the punitive damages at issue here act to deter innocent and unknowing parties — the riding public and taxpayers. But this argument misses the point. As noted in *Davis*, a finding of a substantive due process violation is based on a test which considers "the interest of the public and the individual and whether, considering the legitimate public interests involved, there are other, less onerous means by which the public interest might be protected." *Davis*, supra at 220. Clearly, subjecting an unknowing individual to vicarious criminal liability for the acts of another is a substantive due process violation. *Davis* dealt with a situation where an ascertainable individual was subject to criminal punishment without a hearing or trial. However, unlike *Davis*, there is no criminal punishment involved in the present case. Additionally, as discussed in the body of this dissent, the legitimate public interest in assuring safe environs for public transit customers when combined with means by which the public interest is protected — notice, financial incentive, and the ballot box — more than adequately survives substantive due process scrutiny.

as shareholders scrutinize a corporation. An award of punitive damages deters MARTA officers in the same way as such an award deters corporate officers. To say otherwise is to say that MARTA officials are irresponsible and immune to public criticism.

This is particularly important when, as here, the issue of safety is involved. A significant portion of MARTA's ridership has no other viable means of transportation. Although MARTA is both a public and private actor, it has the luxury of freedom from competition for its services. It is the only comprehensive bus and rail system serving the metropolitan Atlanta area.[6] Because of MARTA's monopoly, consumers of mass transportation are unable to shop with their transportation dollar. Unlike one who is dissatisfied with the performance or safety of his automobile, the patron of public transportation who lacks both the financial resources and alternatives to take his business elsewhere is left powerless in the marketplace. MARTA, essentially, has been told by the majority's opinion, "go to it boys, be careless in operating your system, be irresponsible in hiring your employees, be callous toward the public, you have our blessings and stamp of approval."

MARTA's mission is to provide *safe* and *efficient* transportation.[7] The possibility of punitive damages furthers both of these goals. Punitive damages provide the impetus for MARTA to make necessary safety improvements, to be responsible in hiring its employees, and to be diligent in providing safety to its customers. Without punitive damages, the cost of safety is borne by random and helpless victims. The Legislature has wisely said that the damages suffered by the public as a result of MARTA's torts are to be MARTA's responsibility.[8]

Today's action is one more step toward closing the courthouse doors to citizens who are injured by quasi-government entities. The Legislature opens the doors, this Court slams them in the face of the helpless public, arguing that it is saving the taxpayers' money. That reasoning is faulty because it presumes that this Court is omniscient. It infers that if punitive damages are allowed to be sought, they will always be awarded. However, the right to argue for punitive damages does not ensure a punitive damage award. Our tort law still requires a plaintiff to prove his claim. Allowing one to go forward with a punitive damage claim encourages safety, accountability and efficiency. Meritless claims will be weeded out. Today the majority prevents the

---

[6] Prior to 1971, mass transportation in the Atlanta metropolitan area was provided by the Atlanta Transit System, a private transit company.

[7] See Sec. 3 of the MARTA Act, supra, Ga. L. 1965 at 2245.

[8] Not only did the Legislature make these provisions but the citizens of the cities and counties that MARTA services voted upon what the legislators had proposed before MARTA became a reality. See Ga. L. 1965, p. 2279, Sec. 24 (f). Therefore, this Court is declaring, as against public policy, an act that the taxpayers have approved by referendum.

public and riders of MARTA from availing themselves of these arguments and removes the greatest incentive for MARTA to maintain safe operations. The public's greatest lever to assure safely conducted public transportation has been snatched from it.

The ancient doctrine that the King can do no wrong, an outdated cloak of protection, has, by this Court in this case, been extended to the King's distant relatives to the detriment of the people of the realm. I would affirm the right of the people to remove this cloak because what is under it "ain't" pretty.

DECIDED JULY 16, 1991.

*Pursley, Howell, Lowery & Meeks, Charles N. Pursley, Jr., Paul A. Howell, Jr., Gorby, Reeves, Moraitakis & Whiteman, Michael J. Gorby, Stephanie L. Scheier, Michael E. Fisher,* for appellant.

*James Booker & Associates, James Booker, Ann V. Broussard,* for appellee.