46956. HOSPITAL AUTHORITY OF GWINNETT COUNTY v. JONES.
(409 SE2d 501)

HUNT, Justice.

In the previous appearance of this case, this court sustained a punitive damage award against the hospital authority. *Hospital Auth. of Gwinnett County v. Jones,* 259 Ga. 759 (386 SE2d 120) (1989).[1]

---

[1] In our original opinion, we noted the issue whether punitive damages are appropriately

The United States Supreme Court vacated that judgment and remanded the case to us for reconsideration in light of *Pacific Mut. Life Ins. Co. v. Haslip*, ___ U. S. ___ (111 SC 1032, 113 LE2d 1) (1991).

1. William Harold O'Kelley was severely burned in an automobile accident and was taken to Joan Glancy Hospital in Gwinnett County by ambulance, where he was stabilized. Shortly thereafter, in an attempt to airlift him by helicopter to a hospital with a burn unit, the helicopter crashed. Although others were killed, O'Kelley was only slightly injured, but died several days later as a result of the burns suffered in the automobile accident.

The administrator of O'Kelley's estate sued the hospital authority and was awarded $5,001 in nominal damages and $1,300,000 in punitive damages. This court observed:

> A policy of bypassing emergency care at a nearby hospital or diverting patients from an institution whose specialty would have been beneficial to a patient in order to utilize the authority's own hospitals supports a jury's finding a wanton disregard for the rights, and a conscious indifference to the best interests, of its injured patients. . . . [B]ecause the jury could decide that the patient's slight injuries in the helicopter incident would not have occurred but for the emergency care policy, the award of nominal damages was authorized and it was not inappropriate that the jury act to deter such conduct through the use of punitive damages under OCGA § 51-12-5.

*Hospital Auth. of Gwinnett County v. Jones*, 259 Ga. at 761. This court approved the award of punitive damages, finding it neither excessive nor violative of due process.

In so holding, we pointed out that, in Georgia, the purpose of punitive damages is to deter the repetition of reprehensible conduct by the defendant. OCGA § 51-12-5.[2] Because deterrence is based on factors other than the actual harm caused, we rejected the notion that punitive damages must necessarily bear some relationship to the *actual* damages awarded by the jury.[3] Id. at p. 762. We adhere to this ruling today.

---

awarded against a hospital authority had not been raised in this case. But see *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991); *Hosp. Auth. of Fulton County v. Litterilla*, 199 Ga. App. 345 (404 SE2d 796) (1991), cert. granted July 5, 1991.

[2] Under the new act, punitive damages may be awarded "to penalize, punish, or deter." OCGA § 51-12-5.1. *Hospital Auth. of Gwinnett County v. Jones*, supra, 259 Ga. at 761, fn. 5.

[3] We did, however, note that this relationship may be considered on the issue whether the punitive damage award is excessive due to undue passion and prejudice. *Jones*, supra at p. 762, fn. 9.

While the Supreme Court in *Haslip* analyzed the punitive damages award by comparing it to the actual award, nothing in the opinion mandates such a comparison. In fact, the Court approved the Alabama review standards which include "whether there is a *reasonable relationship* between the punitive damages award and the harm *likely to result* from the defendant's conduct as well as the harm that actually has occurred." (Emphasis supplied.) While comparison to the actual damages may be appropriate in one case, e.g., *Colonial Pipeline v. Brown*, 258 Ga. 115, 123 (365 SE2d 827) (1988), it may not in another. We think *Jones* is one of the latter cases. The actual harm to O'Kelley was slight, but the potential harm to other patients supports the punitive damages award here. The purpose of punitive damages, after all, is to deter such conduct. This award, therefore, is consistent both with the nature of the authority's conduct and the potential ensuing injuries. Surely the process is not rendered unconstitutional by permitting the deterrence of potentially dangerous conduct at a point in time when the injury is slight and when only nominal damages may be involved. Society's interest would seem better served by deterring objectionable conduct at the first opportunity so that the potentially greater injury which might otherwise be caused by such conduct might be avoided.

2. The authority's principal argument on remand is confined to the issue discussed in Division 1. We note, however, that in approving the Alabama procedures, the United States Supreme Court focused on the jury instructions, the post-trial procedures by the trial court, and the post-trial procedures by the state supreme court. *Haslip*, supra, 111 SC at 1044-1046.[4] While Georgia jury instructions may be said to be quite similar to those given in Alabama, it is clear that the Alabama post-trial review by both the trial and appellate court is more structured. See, e.g., *Hammond v. City of Gadsden*, 493 S2d 1374 (Ala. 1986), and *Green Oil Co. v. Hornsby*, 539 S2d 218 (Ala. 1989).

For example, among the guidelines for the review by the Alabama Supreme Court are

(c) The profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the "financial position" of the defendant; . . .

*Haslip*, supra at 1045. We know of no Georgia courts, trial or appellate, which have reviewed these factors. This is not surprising, of

---

[4] In Alabama, civil suits exceeding $10,000 come within the appellate jurisdiction of the Alabama Supreme Court. Code of Alabama §§ 12-2-7; 12-3-10.

course, since no evidence pertaining to either factor would have been submitted to the jury. Nor was such evidence offered in *Haslip* or in any of the other cited Alabama cases.[5] Of what benefit, then, is scrutiny of those elements by the reviewing courts? Any review of them in an effort to ensure that punitive awards are not grossly out of proportion to the conduct and the ensuing damages would be entirely a matter of conjecture or, at least, a matter of opinion based on extraneous factors. Consequently, the verdict in this case would not be more successfully challenged if subjected to Alabama's analysis rather than our own.

Punitive damages do not survive court scrutiny because they can be accurately measured and adjusted by court imposed guidelines.[6] They survive, as Justice Scalia notes, because of their historical acceptance.

> Nor to my mind can anything [but the conclusiveness of history] explain today's decision that a punishment whose assessment and extent are committed entirely to the discretion of the jury is "fundamentally fair." The court relies upon two inconsequential factors. First, the "guidance" to the jury provided by the admonition that it "take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong." That is not guidance but platitude. Second, review of the *amount* of the verdict by the trial and appellate courts, which are also governed by no discernible standard except what they have done in other cases. . . . But it would surely not be considered "fair" (or in accordance with due process) to follow a similar procedure outside of this historically approved context — for example, to dispense with meaningful guidance concerning *compensatory* damages, so long as whatever number the jury picks out of the air can be reduced by the trial judge or on appeal. I can conceive of no test relating to "fairness" in the abstract that would approve this procedure, unless it is whether something even more unfair could be imagined.

*Haslip*, supra, 111 SC at 1053 (Scalia, J., concurring). Clothed in common-law history and tradition, the punitive damage process is thus

---

[5] "Any evidence of Pacific Mutual's wealth was excluded from the trial in accord with Alabama law." *Haslip*, supra, 111 SC at 1044.

[6] The legislature, on the other hand, has by its 1987 enactment, OCGA § 51-12-5.1 (g), made an impact of undeniable significance. Had this case been tried under that statute, the award could have been only $250,000. Alabama enacted the same limitation, also in 1987. See 1987 Ala. Acts, No. 87-185, §§ 1, 2, and 4.

able to withstand a due process challenge which less inveterate procedures could not.

We have reconsidered our previous judgment in light of *Haslip* and have determined that its reversal is not required.

*Judgment affirmed and reinstated on remand. All the Justices concur, except Bell and Fletcher, JJ., who concur in the judgment only.*

DECIDED OCTOBER 18, 1991 —
RECONSIDERATION DENIED NOVEMBER 1, 1991.

*Long, Weinberg, Ansley & Wheeler, W. Meade Burns, Jr., Milton B. Satcher III, Glenn E. Kushel, Hurt, Richardson, Garner, Todd & Cadenhead, Harold N. Hill, Jr., Albert M. Pearson III,* for appellant.

*Butler, Wooten, Overby & Cheeley, James E. Butler, Jr., Robert D. Cheeley, Michael H. Schroder,* for appellee.