A93A0909. HOSPITAL AUTHORITY OF CLARKE COUNTY
v. MARTIN et al.
(438 SE2d 103)

ANDREWS, Judge.

We granted the Hospital Authority of Clarke County's application to file this interlocutory appeal from the order of the trial court denying its motion for partial summary judgment in a medical malpractice action brought by Martin and others. In the order appealed from, the trial court found that the Hosptial Authority had waived sovereign immunity to the extent it was covered by insurance, and that the Hospital Authority was also subject to punitive damages to the extent it had insurance for such damages.

The issue is whether punitive damages may be awarded against the Hospital Authority. Sovereign immunity is not at issue. It is undisputed that the present cause of action accrued prior to the January 1, 1991 amendment to the 1983 Georgia Constitution deleting provisions waiving sovereign immunity to the extent of insurance coverage, and that this action is controlled by the pre-1991 constitutional provisions. See Ga. L. 1990, p. 2435, § 1. It is also undisputed that the Hosptial Authority carried insurance creating a waiver of sovereign immunity under the pre-1991 provisions of the Georgia Constitution, Art. I, Sec. II, Par. IX. See *Curtis v. Bd. of Regents of the Univ. System of Ga.*, 262 Ga. 226 (416 SE2d 510) (1992); *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992).

The Hospital Authority is a public funded governmental entity created pursuant to the Hospital Authorities Act (OCGA § 31-7-70 et seq.). *Cox Enterprises v. Carroll City/County Hosp. Auth.*, 247 Ga. 39 (273 SE2d 841) (1981); *Colquitt County Hosp. Auth. v. Health Star*, 262 Ga. 285 (417 SE2d 147) (1992); *Macon-Bibb County Hosp. Auth. v. Madison*, 204 Ga. App. 741, 742 (420 SE2d 586) (1992); *Hosp. Auth. of Fulton County v. Litterilla*, 199 Ga. App. 345 (404 SE2d 796) (1991), rev'd on other grounds, *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34, supra. Although an award of punitive damages against a hospital authority was sustained in *Hosp. Auth. of Gwinnett County v. Jones*, 259 Ga. 759 (386 SE2d 120) (1989), vacated, ___ U. S. ___ (111 SC 1298, 113 LE2d 234) (1991), the Georgia Supreme Court noted in its opinion that "[n]one of the parties before us raised the question whether punitive damages are appropriately awarded against a public authority and we express no opinion on this issue." Id. at 759, n. 1. Subsequently, in *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991), the Supreme Court ruled that MARTA was not subject to an award of punitive damages because such an award against a governmental entity would violate Georgia

public policy.[1] Quoting U. S. Supreme Court discussion of this issue in *City of Newport v. Fact Concerts*, 453 U. S. 247 (101 SC 2748, 69 LE2d 616) (1981), the Court reasoned that an award of punitive damages against a governmental entity "would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised . . . [;] likely [be] accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill . . . [and would levy punishment, not against the government official who knowingly or maliciously committed the wrong, but against a governmental entity which] can have no malice independent of the malice of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity itself." (Emphasis in original; citations and punctuation omitted.) *MARTA*, supra at 428. After *MARTA v. Boswell* was decided, the case of *Hosp. Auth. of Gwinnett County v. Jones* made its second appearance before the Supreme Court. Id. at 261 Ga. 613. The Court again noted that the appropriateness of the punitive damages award against the hospital authority was not raised as an issue, and followed this comment with a reference to its recent decision in *MARTA v. Boswell. Jones*, supra, 261 Ga. at 613-614, n. 1.

We conclude that *MARTA v. Boswell*, supra controls this issue and establishes that it is against Georgia public policy to allow an award of punitive damages against a hospital authority created as a government entity under the Hospital Authorities Act (OCGA § 31-7-70 et seq.). There is no merit in the argument that punitive damages should, nevertheless, be available to the extent the Hosptial Authority has obtained insurance to cover an award of punitive damages. The clear import of the public policy acknowledged in *MARTA v. Boswell*, supra, is to eliminate the self-defeating expenditure of funds for punitive damages, or for insurance for such damages, by a governmental entity funded by tax revenues. Although the sovereign immunity applicable to the Hospital Authority in this case, and its waiver to the extent of liability insurance protection,[2] springs from the same public policy concerns for protection of the public purse (see *Googe v. Fla. Intl. Indem. Co.*, 262 Ga. 546, 550 (422 SE2d 552) (1992)), the public policy against the award of punitive damages stands on independent grounds unaffected by the existence of insurance coverage. Moreover, the public policy against the award of punitive damages

---

[1] The case of *MARTA v. Binns*, 252 Ga. 289 (313 SE2d 104) (1984) is distinguishable. In that case, MARTA was held liable for punitive damages awarded against it, not as a tortfeasor, but as a self-insurer liable pursuant to OCGA § 33-34-6 for a bad faith refusal to pay no-fault benefits.

[2] We need not address whether the waiver to the extent of liability insurance protection would encompass punitive damages.

against governmental entities enunciated by the U. S. Supreme Court in *City of Newport*, supra, and adopted by the Georgia Supreme Court, was based not only on a concern for the taxpayer's purse, but also on the belief that the punitive and deterrent purposes of such an award would not be served when it is levied against the governmental entity itself, which can have no malice independent of its officials, rather than against the governmental official who committed the wrong. One concern is obviously that an award of punitive damages in this context makes no sense because it will not deter the wrongdoing public official regardless of whether the award is paid out of government coffers or from insurance purchased by the government. If the Hospital Authority has insurance which would cover an award of punitive damages, this does not alter the public policy against the award of such damages. It simply means the Authority has purchased insurance it does not need. The cases cited by the dissent dealing with the waiver of sovereign immunity to the extent of insurance coverage are not analogous, since the waiver in that context was specifically provided for by the Georgia Constitution.

The trial court erred by denying partial summary judgment in favor of the Hospital Authority.

*Judgment reversed. McMurray, P. J., Birdsong, P. J., Johnson, Blackburn and Smith, JJ., concur. Pope, C. J., Beasley, P. J., and Cooper, J., dissent.*

POPE, Chief Judge, dissenting.

I must dissent. When punitive damages are paid by an insurer rather than a governmental entity, the public policy considerations set forth in *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991) and *City of Newport v. Fact Concerts*, 453 U. S. 247 (101 SC 2748, 69 LE2d 616) (1991) are not present and those cases are not controlling. The only benefit derived in such a case is that the insurer is allowed to avoid its contractual obligation to pay an award of punitive damages.

This appeal arises from an action for medical malpractice, negligence, wrongful death and punitive damages filed by the administrator of the estate of Tandy Key Martin and certain other relatives of Martin against Hosptial Authority of Clarke County d/b/a Athens Regional Medical Center and three nurses, who were employed there during the time Martin was a patient. On June 25, 1989, Tandy Key Martin was admitted as a patient at Athens Regional and underwent brain surgery the next day. Plaintiffs assert that on July 15, 1989, while he was still a patient at Athens Regional, Martin was moved from his bed and allegedly restrained in a chair in his hospital room pursuant to his physician's orders. Later that day he fell from that chair fracturing his hip, which required surgical repair. Plaintiffs fur-

ther allege that on August 7, 1991 family members came to visit Martin and found his entire body, clothing, bedding and the room covered with several hundred ants. Martin died on August 31, 1991, allegedly as the result of the negligent actions of the defendants.

Pursuant to OCGA §§ 51-12-5 and 51-12-5.1, punitive damages are authorized in medical malpractice actions when there is evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to the consequences. See generally *Hosp. Auth. of Gwinnett County v. Jones*, 259 Ga. 759 (386 SE2d 120) (1989), vacated, ____ U. S. ____ (111 SC 1298, 113 LE2d 234) (1991), on remand, 261 Ga. 613 (409 SE2d 501) (1991), cert. denied ____ U. S. ____ (112 SC 1175, 117 LE2d 420) (1992).[3] If the facts alleged in the complaint are proved, plaintiffs could show evidence of want of care sufficient to raise the presumption of conscious indifference to the consequences.

The issue of insurance coverage was not presented in *MARTA v. Boswell*, supra. Any award of punitive damages would have been borne by the taxpayers. Cf. *MARTA v. Binns*, 252 Ga. 289 (313 SE2d 104) (1984) (holding that MARTA was liable for punitive damages for actions taken in its capacity as a self-insurer). The determinant public policy underlying the decisions in *MARTA v. Boswell* and *City of Newport v. Fact Concerts* is that "blameless and unknowing taxpayers" should not be forced to pay for the consequences of official misconduct. When indemnification in the form of insurance exists, as in this case, that policy concern is not present. Rather than a blameless taxpayer bearing the burden, any punitive damages are paid by an insurer who has accepted a premium in exchange for a contractual obligation to pay such damages. In such a case the only benefit derived by not allowing the plaintiff to recover punitive damages is that the insurer receives a windfall by not having to fulfill its contractual obligation. As Justice Weltner correctly noted in a special concurrence in *Toombs County v. O'Neal*, 254 Ga. 390, 393 (330 SE2d 95) (1985), "[w]hen a public body has purchased liability insurance, there is no necessity for the protection which sovereign immunity[4] provides *to the public*. Conversely, the insurer, as a private, for-profit entity, should not be accorded the protection of sovereign immunity, which exists for the benefit of the *public*. Thus, as in this case, when the

---

[3] Our Supreme Court noted in both opinions it issued in *Hosp. Auth. of Gwinnett County v. Jones* that the issue of whether punitive damages are appropriately awarded against a hospital authority had not been raised. 259 Ga. at 759, n. 1 and 261 Ga. at 613, n. 1. Interestingly, the Supreme Court allowed punitive damages to be recovered from the Hospital Authority of Gwinnett County after declaring in *MARTA v. Boswell* that punitive damages assessed against governmental entities violates Georgia public policy.

[4] As the majority opinion correctly notes, sovereign immunity springs from the same public policy concern of protection of the public purse.

public utility of sovereign immunity has evaporated, that doctrine should not serve to shield what is purely a private interest."

The only other articulated principle underlying the expression of public policy in *MARTA v. Boswell* is that " '[a] (governmental entity), however, can have no malice independent of the malice of its officials.' " *MARTA v. Boswell*, 261 Ga. at 428 (quoting *City of Newport v. Fact Concerts*, 453 U. S. at 267). Of course, only people can act with malice aforethought; therefore, that rationale applies equally to all defendants who are not individuals, including private corporations. Yet Georgia law allows recovery of punitive damages from private corporations, such as insurance companies. See generally OCGA §§ 51-12-5 and 51-12-5.1; *Federal Ins. Co. v. Nat. Dist. Co.*, 203 Ga. App. 763 (3) (417 SE2d 671) (1992) (holding Georgia corporation which was held liable for punitive damages could seek indemnity from insurer for such damages). Because Georgia law allows punitive damages to be assessed against defendants who are not natural persons, clearly protection of the public purse is the only justification for not allowing punitive damages to be assessed against governmental entities for their tortious acts. Accord *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992) (holding the authority's self insurance trust funds, coupled with any existing commercial insurance constitutes liability insurance protection within the meaning of Art. I, Sec. II, Par. IX of the Georgia Constitution and therefore acts as a waiver of sovereign immunity) and *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62 (2) (424 SE2d 632) (1992) (following *Litterilla*). The majority opinion allows a private corporation to use the public shield to protect itself from fulfilling a purely private contractual interest. When, as here, taxpayers are not forced to pay for the consequences of official misconduct, public policy considerations should not bar a plaintiff from being able to recover an award of punitive damages.

I am authorized to state that Presiding Judge Beasley and Judge Cooper join in this dissent.

DECIDED OCTOBER 13, 1993 —
RECONSIDERATION DENIED NOVEMBER 16, 1993 ■

*Blasingame, Burch, Garrard & Bryant, Gary B. Blasingame, J. Ralph Beaird, Milton F. Eisenberg II*, for appellant.
*Michael J. Anderson*, for appellees.