S94G0356. MARTIN et al. v. HOSPITAL AUTHORITY
OF CLARKE COUNTY.
(449 SE2d 827)

HUNT, Chief Justice.

We granted certiorari to the Court of Appeals in *Hosp. Auth. of Clarke County v. Martin,* 210 Ga. App. 893 (438 SE2d 103) (1993) to review that court's majority opinion that under our holding in *MARTA v. Boswell,* 261 Ga. 427 (405 SE2d 869) (1991), the Hospital Authority, as a governmental entity, is not liable for punitive damages.[1] We affirm.

In *MARTA v. Boswell,* supra, we clearly and unequivocally held that MARTA could not be subjected to an award of punitive damages because such an award against a governmental entity would violate our state's public policy. In so holding, we adopted the rationale of the United States Supreme Court in *City of Newport v. Fact Concerts,* 453 U. S. 247 (101 SC 2748, 69 LE2d 616) (1981) that punitive damages are not appropriate against governmental entities because neither of the twin purposes behind punitive damages — punishment and deterrence — is served by an assessment of those damages against such entities. Since a governmental entity can have no malice

---

[1] In *Hosp. Auth. of Gwinnett County v. Jones,* 261 Ga. 613, n. 1 (409 SE2d 501) (1991), we noted, as we had in the previous appearance of that case, that the issue of whether punitive damages are appropriately awarded against a hospital authority had not been raised in that case. See also *Hosp. Auth. of Gwinnett County v. Jones,* 259 Ga. 759, n. 1 (386 SE2d 120) (1989). Also, as noted by the Court of Appeals in this case, our case of *MARTA v. Binns,* 252 Ga. 289 (313 SE2d 104) (1984) is distinguishable because in that case MARTA was held liable for punitive damages not as a tortfeasor, but as a self-insurer liable for a bad faith refusal to pay no-fault benefits under OCGA § 33-34-6.

independent of its officials, damages for punitive purposes are not sensibly assessed against the entity itself.[2] *MARTA v. Boswell*, supra at 428, citing *City of Newport*, 453 U. S. at 267.[3] The other purpose behind punitive damages, the prevention of future misconduct, is likewise not served by allowing those damages against a governmental entity because the "impact on the individual tortfeasor of this deterrence in the air is at best uncertain." *City of Newport*, 453 U. S. at 269.

The dissent's argument that simply because the Hospital Authority has contracted with an insurance company for coverage for punitive damages, the public policy expressed in *MARTA v. Boswell*, supra, does not apply, is flawed. The majority of the Court of Appeals correctly held that the public policy prohibiting punitive damage awards against governmental entities stands on independent grounds unaffected by the existence of insurance coverage. 210 Ga. App. at 894. As noted above, those independent grounds are that the purposes of punitive damages are not served by allowing those damages against a governmental entity. Contrary to the arguments of the dissent, the existence of insurance and the issue of sovereign immunity simply have no bearing in this case, and do not detract in any way from the policy expressed in *MARTA v. Boswell*, supra, and *City of Newport*, supra.

*Judgment affirmed. All the Justices concur, except Carley and Thompson, JJ., who dissent.*

---

[2] The dissent cites *Greenwood Cemetery v. Travelers Indem. Co.*, 238 Ga. 313, 316-317 (232 SE2d 910) (1977) for the proposition that the fact that the tortfeasor will not be punished is not a public policy concern supporting the disallowance of enforcement of an insurance contract against an insurer. *Greenwood*, and other authority cited by the dissent on this issue, are simply beside the point. In those cases, the insurer, attempting to avoid its contractual obligations, argued that *any* insurance covering punitive damages was void as contrary to public policy because the deterrence effect would be lost where such coverage is permitted. In *Greenwood*, we rejected the argument that coverage for punitive damages is per se invalid. However, the question here is whether the punitive aspect of punitive damages is served by an award of those damages against a governmental entity, *regardless of insurance*. The error of the dissent's reasoning is underscored by its admonition that "the insurer should not be allowed to escape its contractual obligation" in this case. There is no contractual obligation on the part of the insurer where there is no underlying liability.

[3] In *MARTA v. Boswell*, again citing *City of Newport*, we noted that the purpose of punishment against a governmental entity also is not served because an award will come from the public purse, not the actual tortfeasor. *MARTA v. Boswell*, supra at 428. The dissent illogically extrapolates this language to reach the conclusion that because the public purse would be unaffected where insurance is available, punitive damages in these instances should be allowed. Of course, the availability of insurance and the fact that money for punitive damages would be paid by insurance rather than "the public purse," does not have any bearing here because the actual tortfeasor remains unpunished. Also, the public purse would likely be affected through the payment of ever-increasing insurance premiums.

CARLEY, Justice, dissenting.

In the instant tort action, the Court of Appeals held that, without regard to the availability of liability insurance coverage, the public policy of this state nevertheless precludes the return of an award of punitive damages against a governmental entity. *Hosp. Auth. of Clarke County v. Martin*, 210 Ga. App. 893 (438 SE2d 103) (1993). A majority of this court now affirms that holding of the Court of Appeals. In my opinion, the Court of Appeals erred and I must, therefore, respectfully dissent.

In concluding that appellee-defendant Hospital Authority of Clarke County (Hospital Authority) is not amenable to appellant-defendants' claim for punitive damages, the Court of Appeals relied upon the judicial pronouncement of this state's public policy as set forth in *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991). In *Boswell*, however, this court did not broadly hold that a governmental entity can never be amenable to suit for punitive damages. To the contrary, all that *Boswell* held was that "public policy demands that MARTA not be subject to awards of punitive damages, since such awards would seriously damage the public interest." *MARTA v. Boswell*, supra at 427. The availability of liability insurance coverage to governmental entities was not an issue in *MARTA v. Boswell* and the sole articulated "public interest" which underlay the holding therein was the protection of the public purse from becoming the source of satisfaction of a punitive damages award against MARTA itself.

"In general, courts [have] viewed punitive damages as contrary to sound public policy, because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised. [Cit.] . . . [A]n award of punitive damages against a (governmental entity) 'punishes' only the taxpayers, who took no part in the commission of the tort. . . . Indeed, punitive damages imposed on a [governmental entity] are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers. (Cit.) Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct. . . . A [governmental entity], however, can have no malice independent of the malice of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity itself. [Cit.]"

(Emphasis in original.) *MARTA v. Boswell,* supra at 428. In so holding, this court relied entirely upon a decision of the Supreme Court of the United States, wherein that court had likewise recognized "the possible strain on local treasuries and therefore on services available to the public at large." *City of Newport v. Fact Concerts,* 453 U. S. 247, 271 (III) (B) (101 SC 2748, 69 LE2d 616) (1981).

It is this same public policy concern "that the public purse not be emptied by the claims of injured members of the public" which also underlies the constitutional defense of sovereign immunity. *Googe v. Fla. Intl. Indem. Co.,* 262 Ga. 546, 550 (1) (422 SE2d 552) (1992). It follows that the Court of Appeals misconstrued *MARTA v. Boswell* as the judicial recognition of a "public policy against the award of punitive damages [which] stands on independent grounds unaffected by the existence of insurance coverage." *Hosp. Auth. of Clarke County v. Martin,* supra at 894. To the contrary, *MARTA v. Boswell* rests solely on a public policy ground which is otherwise obviated by the availability of liability insurance coverage. What was held in *Martin v. Ga. Dept. of Public Safety,* 257 Ga. 300, 301 (357 SE2d 569) (1987) with regard to the constitutional defense of sovereign immunity is equally applicable to that public policy concern enunciated in *MARTA v. Boswell* as the sole basis for precluding an award of punitive damages against a governmental entity:

"[W]hen a public body has purchased liability insurance, there is no necessity for the protection which sovereign immunity provides *to the public.* Conversely, the insurer, as a private, for-profit entity, should not be accorded the protection of sovereign immunity, which exists for the benefit of the *public.*"

(Emphasis in original.) *Martin v. Ga. Dept. of Public Safety,* supra at 301.

In the decision upon which we relied in *MARTA v. Boswell,* the Supreme Court of the United States ultimately concluded that, "[a]bsent a compelling reason for approving such an award [of punitive damages], not present here, we deem it unwise to inflict the risk [on a governmental entity]." (Emphasis supplied.) *City of Newport v. Fact Concerts,* supra at 271 (III) (B). What was "not present" in *City of Newport v. Fact Concerts* or in *MARTA v. Boswell,* but is "present here," is the alleged availability of liability insurance affording coverage for punitive damages. This asserted availability of liability insurance coverage is a "compelling reason" for holding that the public policy recognized in *MARTA v. Boswell* does not extend to the instant case. If liability insurance coverage for punitive damages is available, there is no "risk" that the public purse will become the

source of satisfaction of "such an award." That "risk" would have been contractually assumed by the insurer who has been compensated therefor.

Nothing whatsoever in *MARTA v. Boswell* purports to preclude a governmental entity, such as the Hospital Authority, from expending its funds for liability insurance coverage for punitive damages if it so chooses. "A hospital authority is a business corporation authorized and able, as are private hospitals, to provide itself with insurance. . . ." *Thomas v. Hosp. Auth. of Clarke County*, 264 Ga. 40, 44 (2) (441 SE2d 404) (1994). Accordingly, any liability insurance purchased by the Hospital Authority would be voluntarily acquired, and not legislatively mandated. *Googe v. Fla. Intl. Indem. Co.*, supra at 550 (1). When liability insurance coverage for such damages is available, the public policy concern that the public purse will become the source of satisfaction of an award of punitive damages simply does not exist and " 'should not serve to shield what is purely a private interest.' " *Martin v. Ga. Dept. of Public Safety*, supra at 301. It follows that *MARTA v. Boswell* is no bar to appellants' recovery of punitive damages and that the Court of Appeals erred in holding otherwise.

Unlike this court's holding in *MARTA v. Boswell*, the holding of the Supreme Court of the United States in *City of Newport v. Fact Concerts* did not rely solely upon the protection of the public purse from the "punishment" effect of an award of punitive damages. That court also concluded that permitting an award of punitive damages to be returned against a governmental entity would not further "the other major objective of punitive damages awards . . . to prevent future misconduct." *City of Newport v. Fact Concerts*, supra at 268 (III) (B). In the instant case, the Court of Appeals concluded that this is an additional public policy concern which militates against permitting an award of punitive damages to be returned against a governmental entity of this state:

> [T]he punitive and deterrent purposes of such an award would not be served when it is levied against the governmental entity itself, which can have no malice independent of its officials, rather than against the governmental official who committed the wrong. . . . [A]n award of punitive damages in this context makes no sense because it will not deter the wrongdoing public official regardless of whether the award is paid out of government coffers or from insurance purchased by the government.

*Hosp. Auth. of Clarke County v. Martin*, supra at 895.

Where, as in *City of Newport v. Fact Concerts* or *MARTA v.*

*Boswell*, there is no liability insurance coverage for punitive damages, the fact that the actual "wrongdoing public official" personally will suffer no "punitive and deterrent" effects of such an award may indeed be *additional* support for the public policy determination to preclude the award from being "levied against the governmental entity itself." However, where, as in the instant case, liability insurance coverage for punitive damages is asserted to be available, there simply is no *initial* public policy concern that the award will be "levied against the governmental entity itself." Where liability insurance coverage is asserted to be available, the public policy concern is whether the contract of liability insurance should be enforced against *the insurer*. In this state, it has long been recognized that the fact the actual tortfeasor personally will suffer no "punitive and deterrent" effects of an award of punitive damages is *not* a public policy concern which supports the disallowance of enforcement of the contract against the insurer. *Greenwood Cemetery v. Travelers Indem. Co.*, 238 Ga. 313, 316-317 (232 SE2d 910) (1977); *Federal Ins. Co. v. Nat. Distributing Co.*, 203 Ga. App. 763, 768 (3) (417 SE2d 671) (1992).

The Hospital Authority is a governmental entity, but it engages in a non-governmental function and is in direct competition with private hospitals for patients. *Thomas v. Hosp. Auth. of Clarke County*, supra at 43 (2). The employees of the Hospital Authority, as those of private hospitals, are not incapable of committing torts which would authorize the imposition of punitive damages. If, as private hospitals are authorized to do, the Hospital Authority has chosen voluntarily to obtain liability insurance for punitive damages awarded as the result of the torts committed by its employees, the insurer should not be allowed to escape its contractual obligation on the ground "that the deterrent effect of punitive damages is lost when such damages are paid by [it]." *Greenwood Cemetery v. Travelers Indem. Co.*, supra at 316. Thus, it is my opinion that the Court of Appeals erred in holding that the fact that the actual "wrongdoing public official" personally will suffer no "punitive and deterrent" effects of an award of punitive damages is additional support for precluding appellants' recovery of such damages in the instant case.

In a tort action against a governmental entity, the established public policy of this state precludes an award of punitive damages to the extent that "such awards would seriously damage the public interest" in protecting the public purse from becoming the source of satisfaction of such an award. *MARTA v. Boswell*, supra at 427. However, the public policy of this state should not be extended to protect the purely private interest of an insurer who has contracted to afford liability coverage to a governmental entity against whom punitive damages are sought. Accordingly, I believe the trial court correctly held that an award of punitive damages can be returned against the

632

Hospital Authority to the limited extent that it may have liability insurance coverage for such damages and I would, therefore, reverse the judgment of the Court of Appeals. By affirming the erroneous judgment of the Court of Appeals, the majority extends the legal rationale of *MARTA v. Boswell* to the situation where the governmental entity has voluntarily purchased independent liability insurance coverage which would otherwise be inclusive of claims for punitive damages. The application of this holding can only result in a windfall for insurers who collect premiums for coverage for which no liability ever attaches. Because I find this to be an unconscionable result, rather than sound public policy, I must respectfully dissent.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED NOVEMBER 21, 1994.

*Michael Anderson,* for appellants.

*Blasingame, Burch, Garrard & Bryant, Gary B. Blasingame, J. Ralph Beaird, Milton F. Eisenberg II, McLeod, Benton, Begnaud & Marshall, Andrew H. Marshall,* for appellee.

*Alston & Bird, Jack S. Schroder, Jr., James C. Grant,* amicus curiae.