46956. HOSPITAL AUTHORITY OF GWINNETT COUNTY et al.
v. JONES et al.
(386 SE2d 120)

HUNT, Justice.

This case raises issues regarding punitive damages: whether the award is authorized under the facts of this case, whether the award is excessive, and whether punitive damages are constitutional under the excessive fines, equal protection, and due process clauses of our state and federal constitutions.[1]

On May 20, 1985,[2] William Harold O'Kelley was severely burned over seventy percent of his body from a fire caused by a head-on collision between his truck and a car in Gwinnett County. Emergency personnel responding to the accident immediately called for a medivac helicopter to evacuate O'Kelley to Grady Hospital's burn unit. While still en route to the accident site, the supervisor of the Gwinnett Hospital Authority's emergency rescue unit, Metro Ambulance Services, Inc., countermanded the unanimous judgment of the emergency technicians at the scene and ordered the patient brought to Joan Glancy Hospital, one of the hospital authority's institutions, even though the helicopter was approaching as the ambulance was leaving with the patient. The helicopter was also diverted to Joan Glancy Hospital.

The Gwinnett Chief of Police, who was the dispatch officer at the time of the accident, related facts of other specific instances when an emergency patient was not taken to the nearest hospital or to a trauma center, but instead to one of the authority's institutions. He further testified that Metro's reason for this policy was to "provide more services to the county."

At the hospital emergency room the patient was stabilized, by the establishment of IV lines which the EMT had been unsuccessful in starting in the ambulance, placement of a respiratory tube in the patient's burned throat after he complained of shortness of breath about an hour after reaching the hospital, and administration of morphine. Due to the severity of his injuries, the patient's chances of survival

---

[1] None of the parties before us raised the question whether punitive damages are appropriately awarded against a public authority and we express no opinion on this issue. Compare *City of Columbus v. Myszka,* 246 Ga. 571 (4) (272 SE2d 302) (1980) (a municipal corporation is not liable for punitive damages); *MARTA v. Binns,* 252 Ga. 289 (313 SE2d 104) (1984) (a rapid transit authority is liable for punitive damages in its capacity as a self-insurer).

[2] Thus, the 1987 legislative amendments to the damage provisions are not directly applicable. Ga. L. 1987, p. 915.

were about 1%. About an hour and a half after arriving, O'Kelley was strapped into a stretcher and loaded onto the helicopter for evacuation to Humana Hospital in Augusta. On lift-off from the hospital parking lot, the helicopter hit a light pole and crashed. Experts testified at trial that the accident was caused by gross pilot error, not only for flying into the pole, but also because the water-alcohol tank, which may have been necessary to give added power to the helicopter engine for the ascent from such a confined space, was empty.

Incredibly, though the pilot and another occupant of the helicopter were killed, O'Kelley was only slightly injured in the helicopter crash. O'Kelley was transported by ambulance to Grady Hospital, where he died six days later as a result of his extensive burns. The bill for services from Joan Glancy Hospital was $1,216.26.

The administrator of O'Kelley's estate sued[3] the Gwinnett Hospital Authority in its own capacity and as the owner of the Gwinnett Ambulance Services doing business as Metro Ambulance Services, Inc.[4], for the negligent acts of the hospital authority employees.

The jury awarded O'Kelley's estate nominal damages of $5,001 against the hospital authority and Metro, and punitive damages of $1,300,000 against the Gwinnett Hospital Authority and $5,000 against Metro Ambulance Services, Inc. The hospital authority appeals.

1. In its first enumeration of error, the Gwinnett Hospital Authority contends the trial court erred in failing to direct a verdict in its favor on the ground that the evidence did not authorize an award of punitive damages. The estate relied on two theories to support its demand for punitive damages: that the hospital authority, motivated by a desire to increase profits rather than by the best interests of its patients, directed emergency patients to its own institutions despite the fact that other hospitals were closer or more suited for the care required by the patient, and that the hospital authority failed to maintain proper emergency helicopter landing areas at its hospitals, specifically Joan Glancy, even though it knew the landings were unsafe and medivac helicopters would occasionally be required to use them.

OCGA § 51-12-5 provides for the award of punitive damages:

In a tort action in which there are aggravating circumstances, in either the act or the intention, the jury may give addi-

---

[3] The driver of the other car involved in the accident and her employing companies were also sued, but that aspect of the case is not relevant here.

[4] Although the hospital authority owned Metro only from 1982 until it sold the service to the county in 1986, it retained the right to direct to which hospital the patients would be taken.

tional damages to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff.[5]

The courts have consistently required that

"[t]o authorize the imposition of punitive or exemplary damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." [Cits.] [*Kaplan v. Sanders*, 237 Ga. 132, 134 (227 SE2d 38) (1976).]

*Associated Health Systems v. Jones*, 185 Ga. App. 798 (2) (366 SE2d 147) (1988). The measure of damages, "within the enlightened conscience of a jury," appears to be judicially engrafted onto this code section.[6] *King v. Towns*, 102 Ga. App. 895, 904 (118 SE2d 121) (1960); *Head v. John Deere Plow Co.*, 71 Ga. App. 276, 279 (30 SE2d 662) (1944). See Div. 5, infra.

There is some evidence in this record to support a finding of aggravated conduct and, therefore, the award of punitive damages. A policy of bypassing emergency care at a nearby hospital or diverting patients from an institution whose specialty would have been beneficial to a patient in order to utilize the authority's own hospitals supports a jury's finding a wanton disregard for the rights, and a conscious indifference to the best interests, of its injured patients. Although the evidence was, to be sure, conflicting, it authorized a determination that the authority's decision was made on an economic, rather than a medical basis. Therefore, because the jury could decide that the patient's slight injuries in the helicopter incident would not have occurred but for the emergency care policy, the award of nominal damages was authorized and it was not inappropriate that the jury act to deter such conduct through the use of punitive damages under OCGA § 51-12-5.[7] *Woodbury v. Whitmire*, 246 Ga. 349, 351

---

[5] Punitive damages to punish or penalize the defendant, as well as to deter him, are provided for under the revised act. Ga. L. 1987, p. 915.

[6] This test must have been adopted from OCGA § 51-12-6: where "the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened conscience of impartial jurors." Under this code section, however, "evidence of the worldly circumstances of the parties, the amount of bad faith in the transaction, and all the attendant facts should be weighed" by the jury, with the express proviso that "the verdict should not be disturbed unless the court suspects bias or prejudice from its excess or its inadequacy." Under OCGA § 51-12-5, such evidence is excluded. *Bob Maddox Dodge, Inc. v. McKie*, 155 Ga. App. 263 (3) (270 SE2d 690) (1980); *Hodges v. Youmans*, 129 Ga. App. 481, 486 (200 SE2d 157) (1973).

[7] Because punitive damages are supportable on the theory that the authority acted in

(271 SE2d 491) (1980).

2. The award in this case is not, as a matter of law, excessive. See Div. 5, infra. That this award appears to bear no rational relationship to the extent of the injury is of no consequence.[8] "[Punitive damages] are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 350 (94 SC 2997, 41 LE2d 789) (1974). The concept of proportionality as a *legal* limitation on the amount of punitive damages applies, in Georgia, only when such damages are given to compensate for wounded feelings. A deterrence award is based on factors, for the most part, unrelated to the injury to any particular victim, and is limited only by the collective conscience of the jury. *Smith v. Milikin*, 247 Ga. 369 (3) (276 SE2d 35) (1981); *King v. Towns*, supra, 102 Ga. App. at 904; *Davis v. Glaze*, 182 Ga. App. 18, 23 (354 SE2d 845) (1987); *Lang v. Hopkins*, 10 Ga. 37 (3) (1851); OCGA § 51-12-12. Compare *Jones v. Spindel*, 122 Ga. App. 390, 394 (177 SE2d 187) (1970). However, while in deterrence cases there is no fixed rule regarding a relationship between the award of punitive and actual damages, a court may always consider that fact in questioning the excessiveness of the verdict.[9] E.g., *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 123 (365 SE2d 827) (1988) (plurality opinion).

3. There is no merit to the hospital authority's contention that an award of punitive damages violates the excessive fines clause of the Eighth Amendment to the United States Constitution. *Browning-Ferris Indus. of Vermont, Inc. v. Kelso*, ____ U. S. ____ (57 USLW 4985, decided June 26, 1989). Nor, under the facts of this case, do we find a violation of the excessive fines clause of our Georgia Constitution, Art. I, Sec. I, Par. XVII. Compare *Colonial Pipeline Co. v. Brown*, supra 258 Ga. at (4).

4. Neither the lower standard for liability, the absence of certain protections available to criminal defendants, nor the lack of a ceiling on the amount of punitive damages that can be awarded, results in a

---

conscious disregard of its patients' rights by diverting them to its own institutions, we need not address whether the failure to maintain an adequate heliport at Joan Glancy Hospital might also support the award. However, "[i]t is the general rule that the mere nonperformance of a duty, even though it be one required by law, will not authorize the recovery of punitive damages." *Kaplan v. Sanders*, supra at pp. 133-134.

[8] The plaintiffs in this case sought no actual damages for injuries, including pain and suffering, or for wrongful death.

[9] An inordinately large deterrence award may be set aside as reflecting undue passion and prejudice rather than an enlightened conscience, *Jones v. Spindel, supra;* OCGA § 51-12-12. We view the language in *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 123 (365 SE2d 827) (1988), as to the lack of proportionality in this light. We do not see *Colonial* as inconsistent with such cases as *Smith v. Milikin*, supra, 247 Ga. at 372, or *King v. Towns,* supra, 102 Ga. App. at 904.

denial of equal protection to civil, as compared to criminal, defendants. Because no fundamental rights or suspect classes are involved, these classifications pass the rational basis test under minimal scrutiny. *Colonial Pipeline Co. v. Brown*, supra, 258 Ga. at 124 (Clarke, P. J., dissenting).

5. The hospital authority next contends that OCGA § 51-12-5, supra, violates due process in that its notice as to the proscribed conduct is unconstitutionally vague and in that its measure of damages, based solely on the "enlightened conscience of the jury," permits verdicts which may be arbitrary and oppressive and yet not subject to limitation by appropriate procedural safeguards.

a. Initially, the hospital authority argues that neither a potential defendant nor a jury can distinguish between a "lack of ordinary care" amounting to negligence and an "entire want of care" entitling a plaintiff to punitive damages. We disagree. Since, under Georgia law, a scienter element which goes beyond even gross negligence is required, e.g., *BLI Constr. Co. v. Debari*, 135 Ga. App. 299, 302 (217 SE2d 426) (1975), the standard of conduct set by OCGA § 51-12-5 is not unconstitutionally vague. Under proper instruction from the trial court, a jury may distinguish between merely negligent or grossly negligent behavior and the scienter necessary to meet the standard for punitive damages: "wilful misconduct, malice, fraud, wantonness or oppression, or that entire want of care that raises a presumption of a conscious indifference to consequences." As the United States Supreme Court said in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U. S. 489, 498-499 (102 SC 1186, 71 LE2d 362) (1982):

> The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed. [Footnotes omitted.]

See generally *Smith v. Wade*, 461 U. S. 30, 46-51 (103 SC 1625, 75 LE2d 632) (1983); *Bankers Life &c. Co. v. Crenshaw*, 486 U. S. 71 (108 SC 1645, 100 LE2d 62) (1988) (Justice O'Connor concurring in part).[10]

b. Punitive damages, like damages for pain and suffering, are decided in this state according to the "enlightened conscience of the

---

[10] "Although this standard may describe the required mental state with sufficient precision, the amount of the penalty that may ensue is left completely indeterminate."

jury." The hospital authority contends this standard denies due process in failing to establish any guidelines to channel the broad discretion of the jury.

The right to punitive damages derives from the common law.[11] See 1 Callaghan, *Punitive Damages Law and Practice,* § 1.01.[12] Although OCGA § 51-12-5 codifies the right to punitive damages where "there are aggravating circumstances, in either the act or the intention," guidelines for neither the conduct nor the amount of damages are included in the statute. As set out in Div. 1, supra, the standard for judging the defendant's conduct entitling the plaintiff to punitive damages has been judicially explicated. See also Div. 5 (a). Likewise, the standard by which the jury assesses damages has been judicially engrafted onto the statute.[13] Historically, the jury's discretion is controlled *by the facts of the case* as evaluated "in the enlightened conscience of the jury." See n. 6, supra. It is important to point out, however, that there are other controls upon the jury's verdict, which have served over the years as a check to the jury's unbridled discretion.

The statutory scheme itself is designed to protect defendants against excessive verdicts. As was said in *Brown v. Service Coach Lines,* 71 Ga. App. 437, 444 (31 SE2d 236) (1944):

> [t]he rules of law governing (1) the right of the jury to originally fix the damages, (2) the right of the appellate court to grant a new trial where the verdict is alleged to be excessive or inadequate, and (3) the right of the trial judge to grant a

---

[11] "Whether in this case common-law remedies . . . constitute due process of law must turn on an analysis of the competing interests at stake, viewed against the background of 'history, reason, [and] the past course of decisions.' " *Ingraham v. Wright,* 430 U. S. 651, 675 (97 SC 1401, 51 LE2d 711) (1977).

[12] Callaghan points out in his treatise, supra, at § 3.03, p. 3-15:
thus far, each time a punitive damages statute has been attacked on void-for-vagueness grounds, the argument has been rejected because the courts have found sufficient standards to properly apply the challenged legislation. In addition to the reasons for doing so supplied by the courts, those results may be due, in large measure, to the fact that the statutes amounted to nothing more than a codification of a general common-law rule.
E.G., *Bertero v. Nat. General Corp.,* 529 P2d 608, 625, n. 13 (118 Cal. Rptr. 184) (1975).

[13] Since the standard for measuring damages is judicially created, see n. 6, supra, we recommend that trial courts, even under the new statute, see n. 2, supra, consider charging the jury on the factors appropriate to the verdict. Such factors may include: (1) the nature and egregiousness of the defendant's conduct; (2) the extent and duration of the defendant's wrongdoing and the possibility of its recurrence; (3) the intent of the defendant in committing the wrong; (4) the profitability of the defendant's wrongdoing; (5) the amount of actual damages awarded; (6) previous awards of punitive damages against the defendant; (7) potential or prior criminal sanctions against the defendant based upon the same wrongful acts; and (8) any other pertinent circumstances. 1 Callaghan, supra at § 5.39 (Supp. 1989). Under the new law, Ga. L. 1987, p. 915, evidence of the financial circumstances of the defendant may be admissible.

new trial where in his discretion he thinks the verdict "unfair, unjust, contrary to the evidence, excessive, or too small," exist apart from and independent of each other.

Trial courts are authorized to set aside arbitrary verdicts under OCGA § 51-12-12:

> The question of damages is one for the jury; and the court should not interfere with the jury's discretion unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias,

or, if requested by a proper motion for new trial under OCGA § 5-5-20, ". . . when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." In fact, the rule allowing a trial court to grant a new trial under OCGA § 5-5-20 is considerably less stringent than under OCGA § 51-12-12:

> When a trial judge orders a new trial on the general grounds in a damage case, this court will presume that his mind and conscience were satisfied that the verdict was unjust in some respect; not merely that he himself, if he had been acting as a juror, would not have fixed upon the amount specified in the verdict. If the judge, had he been upon the jury, could not conscientiously have given acquiescence to the verdict rendered, he is not required to approve it; and we will not control him in refusing to do so. On the other hand, if he can conscientiously acquiesce in the verdict, though it may not exactly accord with his best judgment, or though some other finding might seem somewhat more satisfactory to his mind, and if his sense of justice is reasonably satisfied, he should, in the absence of some material error of law, affecting the trial approve it, and this court will uphold him in so doing.

*Holland v. Williams,* 3 Ga. App. 636, 638 (60 SE 331) (1907). As was said in *Seaboard Air-Line R. Co. v. Benton,* 43 Ga. App. 495, 505 (159 SE 717) (1931),

> [b]efore a verdict becomes final it should, where the losing party requires it by a motion for a new trial, receive the approval of the mind and conscience of the trial judge. He is sometimes spoken of as the thirteenth juror. Until his approval is given, the verdict does not become binding, in a case where a motion for a new trial contains the general grounds.

Thus, under both of these statutes, a trial court has the broad discretionary authority to set aside any judgment it considers excessive and not supported by the evidence.[14]

The appellate courts may also set aside an oppressive jury verdict under OCGA § 51-12-12. Although the statutory standard has been variously described,

> [a]s a general rule, the size of the award for damages in a case such as this is left to the enlightened conscience of impartial jurors, *subject to approval of the trial court. Jones v. Spindel,* 122 Ga. App. 390 (177 SE2d 187) (1970). The appellate court will not disturb the award "absent an award so excessive or inadequate as to shock the judicial conscience." [Emphasis supplied.] [*Davis v. Glaze,* supra, 182 Ga. App. at 23.]

Accord, *Smith v. Milikin,* supra, 247 Ga. at 372. While this test admittedly sets a high threshold for an appellate court to upset a jury verdict, that standard is not unlike the "arbitrary and unreasonable" measure for unconstitutionality. E.g., *Barrett v. Hamby,* 235 Ga. 262, 265 (219 SE2d 399) (1975).

We hold that the general standard of review of damages awards set out in OCGA § 51-12-12 and OCGA § 5-5-20 is designed to protect defendants subjected to punitive damages that amount to a deprivation of property. Thus, we conclude the statutory scheme providing for punitive damages does not deny due process for failing to provide adequate procedural safeguards and is not *per se* unconstitutional, but under OCGA § 51-12-12, and, if requested by a motion for new trial under OCGA § 5-5-20, each verdict must be scrutinized to see that it meets the parameters of due process.

In the case before us, the hospital authority moved for a new trial and specifically requested the trial court to review the punitive damages awarded. The trial court declined to set the award aside. We have reviewed the evidence presented in this case and hold, under the circumstances presented, the trial court did not abuse its discretion in refusing to overrule the jury's punitive damage award. Nor, do we find the judgment so excessive as to be unconstitutional. OCGA §§ 5-5-20; 51-12-12. We affirm.

*Judgment affirmed. Clarke, P. J., Smith, Gregory, and Bell, JJ., and Judge James W. Head concur in the opinion. Marshall, C. J., concurs in the judgment only. Weltner, J., not participating.*

---

[14] Ga. L. 1987, p. 915 reveals an even stronger state policy authorizing trial judges to reduce or reject excessive verdicts not in accordance with the *preponderance of the evidence.*

DECIDED NOVEMBER 22, 1989 —
RECONSIDERATION DENIED DECEMBER 20, 1989.

*Long, Weinberg, Ansley & Wheeler, Meade Burns, M. B. Satcher III, Glenn E. Kushel,* for appellants.

*Butler, Wooten, Overby & Cheeley, James E. Butler, Jr., Robert D. Cheeley, Swift, Currie, McGhee & Hiers, Michael H. Schroder,* for appellees.