S93A0725. MACK TRUCKS, INC. v. CONKLE et al.
S93A0726. STATE OF GEORGIA v. CONKLE et al.
(436 SE2d 635)

CLARKE, Chief Justice.

Appellee Daniel Conkle was injured in October 1988, after the tractor trailer truck he was driving overturned when its right frame rail broke. Conkle and his wife filed suit against appellant Mack Trucks, Inc. (Mack), the manufacturer of the truck, alleging that the frame rail broke as the result of a fatigue crack, and that Mack was liable under product liability theories of strict liability and negligence. Additionally, the appellees sued Interstate Truck Leasing, Inc. (ITL), the repair facility for the truck, for negligently failing to maintain the truck and discover its defects.

The jury returned special verdicts, finding that ITL negligently failed to maintain the truck, and that Mack was liable for "negligent failure to recall or warn." The jury found that Mack was not liable under a theory of "strict products liability." The jury also found that Daniel Conkle was responsible for 15 percent of his injuries. The jury returned a verdict for compensatory damages in the amount of $184,082, and an award of punitive damages against Mack in the amount of $2 million.

As part of the judgment in this case, the trial court granted the appellees' motion to declare OCGA § 51-12-5.1 (e) (2) unconstitutional. That subsection of the Code provides, in part, that 75 percent of awards of punitive damages arising out of product liability cases,

less costs and reasonable attorney fees, "shall be paid into the treasury of the state."

ITL did not appeal the judgment. In Case No. S93A0725, Mack appeals the award of punitive damages, but does not contest the award of compensatory damages. In Case No. S93A0726, the State of Georgia appeals the trial court's determination that OCGA § 51-12-5.1 (e) (2) is unconstitutional. As some of the enumerations of error in each appeal overlap, they will be treated together.

1. Appellant Mack initially argues that the award of punitive damages under OCGA § 51-12-5.1 (e) (1)[1] cannot be sustained because that subsection relates to actions arising from product liability, and the jury's special verdict concluded that Mack was not liable for "strict products liability." Therefore, Mack argues, the trial court erred in not applying subsection (g)[2] of the statute, with the resulting effect that the award of punitive damages would be capped at $250,000. Mack argues that this court should limit a product liability action to the definition found in OCGA § 51-1-11 (b) which provides that a manufacturer of property sold as new property shall be liable in tort to any person who uses, consumes, or is affected by the property, and

> who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

As can be seen, under OCGA § 51-1-11 (b), "strict liability is imposed for injuries suffered." *Talley v. City Tank Corp.*, 158 Ga. App. 130, 134 (279 SE2d 264) (1981). However, the jury's verdict in this case, that Mack is liable on the basis of its "negligent failure to recall or warn," was based on a negligence theory of product liability which is recognized under OCGA § 51-1-11 (c).[3] *Browning v. Maytag Corp.*,

---

[1] Subsection (e) (1) provides, in part, "[i]n a tort case in which the cause of action arises from product liability, there shall be no limitation regarding the amount which may be awarded as punitive damages."

[2] This subsection provides,
[f]or any tort action not provided for by subsection (e) or (f) [relating to awards of punitive damages for intentional torts] of this Code section in which the trier of fact has determined that punitive damages are to be awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00.

[3] This subsection provides that
[t]he limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or

261 Ga. 20 (401 SE2d 725) (1991). See also *Talley*, supra at 137. As such, the trial court correctly concluded that this was a product liability action sounding in negligence, and did not err in refusing to apply OCGA § 51-12-5.1 (g) to the award of punitive damages.

2. The trial court declared OCGA § 51-12-5.1 unconstitutional in several respects.

(a) The trial court initially held that subsection (e) (2), requiring that 75 percent of punitive damages awarded in a product liability action be paid into the state treasury, violates the equal protection clauses of the United States and Georgia constitutions because it discriminates arbitrarily between product liability plaintiffs and plaintiffs in all other tort cases. In order to withstand an equal protection challenge under the rational basis test, which the parties concede is applicable here, the statutory classification

> "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Allrid v. Emory Univ.*, 249 Ga. 35, 38 (285 SE2d 521) (1982).

To address the constitutionality of this subsection, the statute must be analyzed in its entirety. We begin with the premise that there is no constitutional right to an award of punitive damages. *Teasley v. Mathis*, 243 Ga. 561 (255 SE2d 57) (1979); *Kelly v. Hall*, 191 Ga. 470, 472 (12 SE2d 881) (1941).

OCGA § 51-12-5.1 sets forth a comprehensive scheme regulating punitive damages which may be awarded in tort actions. Subsection (a) provides that punitive damages are awarded to "penalize, punish or deter a defendant." Subsection (c) provides that punitive damages "shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." The remainder of the statute is three-tiered, addressing awards of punitive damages in product liability cases, (subsection e); in tort cases which do not involve product liability but in which the defendant acted, or failed to act, with the "specific intent to cause harm" (subsection f); and in all other tort actions which subsections (e) and (f) do not address (subsection g).

Subsection (e) (1) provides that, in product liability cases, there is no limitation on the amount which may be awarded as punitive

---

birth defect, or arising out of conduct which manifests a willful, reckless or wanton disregard for life or property. *Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.*
(Emphasis supplied.)

damages. However,

> [o]nly one award of punitive damages may be recovered in a court in this state from a defendant for any act or omission if the cause of action arises from product liability, regardless of the number of causes of action which may arise from such act or omission.

Subsection (e) (2) provides that 75 percent of the punitive damages awarded in a product liability action, less costs of litigation and attorney fees, will be paid into the state treasury.

Under subsection (f) of the statute, in a case in which the cause of action does not arise from product liability, but it is determined that the defendant acted or failed to act with the "specific intent to cause harm," there is no limitation on the amount of punitive damages which can be awarded.

Subsection (g) provides that in all tort actions which do not involve product liability, and in which the defendant did not act or fail to act with specific intent to cause harm, "the amount [of punitive damages] which may be awarded in the case shall be limited to a maximum of $250,000."

The clearly stated purpose of the statute is to punish and deter the defendant in a tort action. Subsection (a). The statute emphatically provides that punitive damages are not to be awarded as compensation to the plaintiff. Subsection (c). With regard to product liability actions, subsection (e) (1) effectuates these purposes by providing no ceiling on the amount of punitive damages which may be awarded. However, this punishment is limited by the fact that there may be only *one* such punishment meted out to a product liability defendant "regardless of the number of causes of action which may arise" from his conduct. Id. This limitation strongly enforces the legislature's stated intent that the purpose of the statute is to punish the defendant, and not to provide compensation or, in our view, a windfall to an individual plaintiff. Rather, we think that the purpose of this subsection is to authorize punishment of a defendant who has the potential to greatly damage society at large. The statute furthers this purpose by not allowing the first plaintiff to reach the courthouse with a product liability lawsuit to reap a windfall from the punitive damages, but instead requiring that three-quarters of the punitive damages awarded be paid into the state treasury for the benefit of all Georgia citizens. Punishment and deterrence of the defendant being the purposes of the subsection, it is insignificant under the statute that the plaintiff does not receive the full award.

It can be seen that subsections (e), (f) and (g) constitute a consistent statutory scheme for the regulation of punitive damages. In a

case in which the cause of action arises from product liability, the risk falls on society as well as on the individual plaintiff who has been harmed. Because of the potential ability to damage numerous citizens, the defendant may be punished by the imposition of unlimited damages, but this may occur only one time. As we stated in *Hospital Auth. v. Jones*, 261 Ga. 613, 615 (409 SE2d 501) (1991), with regard to an award of punitive damages, "[s]ociety's interest [is] better served by deterring objectionable conduct at the first opportunity so that the potentially greater injury which might otherwise be caused by such conduct might be avoided." As the risk and harm are distributed between the individual plaintiff and all citizens of Georgia, the legislature has seen fit to distribute a portion of the damages awarded to those at potential risk — all citizens of the state. We note that there is no compelling reason to allow the only plaintiff permitted to litigate the punitive damages issue in court to retain all the punitive damages award, while future plaintiffs bringing identical causes of action will not be entitled to seek awards of punitive damages.

In a case in which the cause of action does not arise from product liability, but the defendant acted or failed to act with the specific intent to cause harm, the legislature has set no limit on the amount of punitive damages. Subsection (f). This is so because the defendant, acting with great culpability, placed an individual at risk. In this instance the individual is entitled to retain all punitive damages awarded him.

The final tier of the statute involves neither product liability nor specific intent to harm. In this type case the individual plaintiff, rather than society, is harmed, but the legislature has determined that, absent specific intent to harm, there are public policy reasons which dictate that a cap should be placed on punitive damages. We have previously held that the legislature may lawfully circumscribe punitive damages in this circumstance. *Bagley v. Shortt*, 261 Ga. 762 (410 SE2d 738) (1991).

Thus, the appellant is correct in its assertion that defendants in various tort actions are treated differently, and the trial court was correct in its finding that the statute treats plaintiffs in various tort actions differently. However, all *similarly situated* plaintiffs and defendants, including those in product liability actions, are treated equally by the statute. We conclude that subsection (e) is not arbitrary, and therefore reverse the trial court's finding that subsection (e) (2) violates equal protection. *C. W. Matthews Contracting Co. v. Gover*, 263 Ga. 108 (428 SE2d 796) (1993); *Allrid*, supra. We further hold that the trial court did not err in rejecting appellant's claim that subsection (e) (1) violates equal protection principles.

(b) Because the trial court erroneously concluded that the purpose of OCGA § 51-5-12.1 is revenue raising, the trial court erred in

holding that the statute violates Ga. Const., Art. III, Sec. V., Par. III, providing that no bills shall contain subject matter different from that expressed in the title. *American Booksellers Assn. v. Webb*, 254 Ga. 399 (329 SE2d 495) (1985).

(c) Likewise, the trial court erred in holding that subsection (e) (2), which requires that 75 percent of the punitive damages awarded in a product liability case be paid to the state, constitutes a taking under the Fifth and Fourteenth Amendments to the United States Constitution. A plaintiff has no vested property right in the amount of punitive damages which can be awarded in any case, and the legislature may lawfully regulate the amount of punitive damages which can be awarded. *Teasley v. Mathis*, supra; *Bagley v. Shortt*, supra; *Kelly v. Hall*, supra.

3. At trial appellees were permitted to offer evidence that, prior to the incident which gave rise to this litigation, Mack had received numerous complaints about cracks in the frame rails of the type tractor trailer truck driven by appellee Conkle. Appellant maintains that this evidence should not have been admitted because some of the cracks involved were dissimilar to the crack in the frame rail of Conkle's truck. We have reviewed the record in this case and conclude that the evidence admitted of frame cracks in numerous other Mack tractor trailer trucks is substantially similar to the frame crack in the truck at issue. This evidence was relevant to the issues of notice and punitive damages, and was properly admitted. *Skil Corp. v. Lugsdin*, 168 Ga. App. 754 (309 SE2d 921) (1983); *Gunthorpe v. Daniels*, 150 Ga. App. 113 (257 SE2d 199) (1979). We further note that the trial court refused to admit evidence of frame cracks which were caused by circumstances wholly different from the one at issue.

4. Appellant argues that its motion for directed verdict on the issue of punitive damages should have been granted because there was no "clear and convincing evidence," as required by OCGA § 51-12-5.1 (b), to support the award.

The record in this case is replete with evidence showing that, for four years prior to the incident which gave rise to Conkle's injuries, Mack's engineering division repeatedly informed other divisions of the corporation that the frame rail on the type truck driven by Conkle was inadequate and should be replaced with a reinforced frame. The jury was authorized to find from the evidence presented that in each instance appellant ignored or rejected this advice, and that in 1984 and again in 1987, the marketing division of Mack vetoed a proposal by the engineering division to reinforce the frames on newly built trucks at a cost of $103. The record further shows that there was no notification to the purchasers of these trucks of the problems associated with the frame rails.

We conclude that this evidence, along with other evidence in the

record, shows a "conscious indifference to consequences," and therefore meets the "clear and convincing" standard of OCGA § 51-12-5.1 (b).

5. Last, appellant argues that the award of punitive damages is so excessive as to violate the due process clauses of the Georgia and United States constitutions; the Eighth Amendment of the United States Constitution; and the excessive fines clause of the Georgia Constitution, Art. I, Sec. I, Par. XVII. We have held in *Hospital Auth. v. Jones*, supra, and its predecessor, *Hospital Auth. v. Jones*, 259 Ga. 759 (386 SE2d 120) (1989), that punitive damages are not unconstitutional for any of the reasons here alleged. In *Jones*, this court upheld a punitive damages award of $1.3 million where the award of nominal damages was $5,000 on the ground that while the actual harm done by the defendant was slight, "the potential to harm [others] supports the punitive damages award." 261 Ga. at 615. That rationale is applicable to this case. In conclusion, we hold that appellant has failed to show that this particular award is so excessive as to violate the constitutional principles raised.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Benham, J., who concurs in the majority's affirmance of the award of punitive damages in Case No. S93A0725 but dissents as to Division 3 (a) in Case No. S93A0726.*

BENHAM, Justice, concurring in part and dissenting in part.

I concur in the majority's affirmance of the award of punitive damages in Case No. S93A0725. However, I must respectfully dissent to Div. 3 (a) in Case No. S93A0726, where the majority opinion reverses the trial court's determination that OCGA § 51-12-5.1 (e) (2) is unconstitutional under the Equal Protection Clauses of the United States Constitution and the Constitution of the State of Georgia. For the purposes of this discussion, the Equal Protection guarantees of the Georgia Constitution under Art. I, Sec. I, Par. II, are coextensive with those of the United States Constitution. Thus, the same analysis is applicable to both provisions. *Ambles v. State*, 259 Ga. 406 (383 SE2d 555) (1989). Since no fundamental right or suspect class is involved, I am in agreement with the majority that the rational relationship test is applicable and that neither intermediate nor heightened scrutiny is required.

The issue we are required to decide is whether the legislature, in providing that 75 percent of punitive damages awards in products liability cases should go to the general fund of the state,[4] violated the

---

[4] OCGA § 51-12-5.1 (e) (2) provides as follows:
Seventy-five percent of any amounts awarded under this subsection as punitive damages, less a proportionate part of the costs of litigation, including reasonable

constitutional guarantee of Equal Protection. In considering whether a statute meets Equal Protection requirements, the test set out in *Clark v. Singer*, 250 Ga. 470 (298 SE2d 484) (1983), requires that the classification be rationally related to some legitimate governmental interest and that it "rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Id. at 472.

Looking first to the classification established by this portion of the statute, I cannot agree with the majority that all similarly situated plaintiffs are treated equally. The majority opinion appears to limit the scope of "all similarly situated plaintiffs" to those plaintiffs seeking punitive damages in products liability cases. With regard to the confiscation by the State of 75 percent of a jury's award of punitive damages, the majority gives no reason, and I am aware of none, why all tort plaintiffs who seek punitive damages are not similarly situated. That being so, it is apparent that the statute creates a separate class of plaintiffs who base their suits (and their claims for punitive damages) on products liability, and treats them differently than other tort plaintiffs seeking punitive damages by taking three-fourths of the punitive damages awarded them.

Turning from the scope of the classification to the relation of that classification to a legitimate state interest, I note that the State has suggested four purposes to be served by the classification at issue: to facilitate business development, to avert an insurance crisis, to prevent windfalls, and to punish and deter defendants. Assuming for this discussion the legitimacy of those purposes, I still cannot find the disparate treatment of products liability plaintiffs to be rationally related to those purposes. While it is certainly arguable that the single award provision of OCGA § 51-12-5.1 (e) (1) facilitates business development by ensuring that those whose negligence has put a defective product in the stream of commerce in Georgia will only be punished once, the diversion of most of the punitive damages into the general fund of the State mandated by subsection (e) (2) does nothing for the defendant or for business development in general. With regard to the asserted crisis in the insurance industry, the situation here is the same as that in *McBride v. General Motors Corp.*, 737 FSupp. 1563 (M.D. Ga. 1990), where the District Court, considering constitutional challenges to OCGA § 51-12-5.1, found the record lacking in

---

attorney's fees, all as determined by the trial judge, shall be paid into the treasury of the state through the Office of Treasury and Fiscal Services. Upon issuance of judgment in such a case, the state shall have all rights due a judgment creditor until such judgment is satisfied and shall stand on equal footing with the plaintiff of the original case in securing a recovery after payment to the plaintiff of damages awarded other than as punitive damages.

evidence that such a crisis exists. As for the prevention of windfalls, the provision for giving most of a punitive damages award to the State not only does not eliminate a windfall to the plaintiff, it gives a windfall to the State, which has not only done nothing to advance the litigation, but has not protected the public from defective products and will not be obliged to use the windfall to benefit those damaged by the same defective products. Finally, with regard to the punitive purpose of the provision for taking the greater part of the award and giving it to the State, I agree completely with what the Supreme Court of Colorado said in holding a similar statute unconstitutional,

> It goes without saying that placing the burden of payment on the judgment creditor who suffered the wrong bears no reasonable relationship to any arguable goal of punishing the wrongdoer or deterring others from engaging in similar conduct.

*Kirk v. Denver Pub. Co.*, 818 P2d 262, 270 (Colo. 1991). Furthermore, I believe that by removing, or at least crippling, the financial incentive for private citizens to pursue vigorously contested claims for punitive damages, the punishment and deterrence purpose of punitive damages is greatly hindered. I conclude, therefore, that the confiscatory provisions of OCGA § 51-12-5.1 (e) (2) cannot fairly be said to be rationally related to any legitimate state interest. Accordingly, I would hold that the statute violates the Equal Protection guarantees of the constitutions of the United States and Georgia.

While the issue presented to us in this case is a matter of first impression for this court, it is a matter that has been specifically addressed by the United States District Court for the Middle District of Georgia (*McBride*, supra) and generally addressed by three other courts. Only four other states have statutes similar to ours (Florida, Iowa, Illinois, and Colorado), and only three of those statutes have been challenged. Florida and Iowa, both of which require that the portion of a punitive damages award taken by the state be paid into a special state fund, have held their statutes constitutional. *Gordon v. State of Fla.*, 608 S2d 800 (Fla. 1992); and *Shepherd Components v. Brice Petrides-Donohue &c.*, 473 NW2d 612 (Iowa 1991). Colorado's statute is more closely akin to Georgia's statute, and that state has declared its statute unconstitutional. *Kirk*, supra. While this court is not bound by the United States District Court's decision in *McBride*, supra, that our statute is unconstitutional, or by the reasoning of the Colorado Supreme Court in declaring its similar statute unconstitutional, I find the reasons expressed in both those decisions highly persuasive. For the reasons stated in those cases and the reasons I have set out above, I am convinced that OCGA § 51-12-5.1 (e) (2) denies

equal protection of the laws and is, therefore, unconstitutional.

DECIDED NOVEMBER 22, 1993.

*Webb, Carlock, Copeland, Semler & Stair, Robert C. Semler, William T. Clark, Julianne L. Swilley,* for appellant (case no. S93A0725).

*Michael J. Bowers, Attorney General, Michael E. Hobbs, Deputy Assistant Attorney General,* for appellant (case no. S93A0726).

*Evans & Evans, Larry Keith Evans, Chambers, Mabry, McClelland & Brooks, Eugene C. Bessent, Lane, O'Brien, Caswell & Taylor, Richard L. Ormand,* for appellees.

*Butler, Wooten, Overby & Cheeley, James E. Butler, Jr., Robert D. Cheeley, Albert M. Pearson III, Patrick A. Dawson,* amici curiae.