A09A0871. FORD MOTOR COMPANY v. REESE et al.

(684 SE2d 279)

BERNES, Judge.

Mary Bessie Reese was paralyzed and died 22 days after the 1994 Ford Tempo she was driving was rear-ended by a dump truck. Her surviving children brought this wrongful death and survival action against Ford Motor Company in which they contended that Reese's seatback collapsed in the rear impact due to a defective design, causing Reese to suffer more severe injuries than she otherwise would have suffered in the collision. The jury returned a verdict against Ford. On appeal, Ford contends that the trial court erred by instructing the jury on a duty to recall when no such duty exists under Georgia law; by giving an incomplete and misleading jury instruction regarding the crashworthiness doctrine; by allowing the plaintiffs to introduce complaints from other lawsuits against Ford to establish notice of the alleged seat defect; and by admitting the deposition testimony of the plaintiffs in five of the other lawsuits concerning the injuries they or their children suffered. As explained below, absent special circumstances not applicable here, Georgia law does not impose a duty upon a manufacturer to recall a product after the product has left the manufacturer's control. We therefore reverse the judgment and remand for a new trial.

The record shows that in the early morning hours of November 2, 2002, Reese was driving her 1994 Ford Tempo down a two-lane rural highway when a loaded 58,000-pound dump truck ran into the rear of her vehicle. The impact of the collision caused the Tempo to accelerate 15 miles per hour in a tenth of a second. The Tempo traveled 371 feet down a steep embankment before coming to a stop at the edge of the woods. Reese was paralyzed due to a fractured spine and died 22 days later in the hospital.

The plaintiffs sued Ford, alleging that Reese's seatback had collapsed at the time of the rear impact due to a design defect. They

asserted claims for defective design under theories of negligence and strict liability, for negligent failure to warn of the alleged defect, and for negligent failure to recall the Tempo seat and seatback. At trial, the plaintiffs presented expert testimony that Reese's seatback was defective because the metal on the seat frame tore upon rear impact, causing the seatback to collapse rearward such that Reese's head and shoulders were thrown against the rear seat, and resulting in a T12 compression spinal fracture and fatal injuries to her head and brain. According to the plaintiffs' experts, Ford could have devised a warning that would have alerted customers to the potential risk of seatback collapse upon rear impact, and could have utilized an alternative seat design at the time of manufacture or retrofitted the Tempo through a recall campaign that would have made the seatback safer and would have prevented Reese's injuries and death.

Ford answered and defended by presenting its own expert testimony that the design of the Tempo seatback was reasonable, protected occupants better than more rigid seats in most accidents, and was consistent with the prevailing state of the art and industry standards. Ford also presented evidence that Reese's compression fracture and head injuries occurred, not as the result of the alleged collapse of the seatback, but in a second crash that occurred when the vehicle smashed into the bottom of the embankment before stopping at the edge of the woods.

After hearing the conflicting evidence, the jury returned a verdict in favor of the plaintiffs and awarded compensatory damages, but not punitive damages. The trial court entered judgment on the jury verdict and also awarded post-judgment interest against Ford. This appeal followed.

1. The plaintiffs sued Ford in part for negligent failure to recall the Tempo seat and seatback. Ford filed a motion to dismiss for failure to state a claim, which the trial court denied. Ford later filed a motion in limine to exclude all evidence and argument related to an alleged failure to recall, and the trial court denied that motion as well. After the close of the evidence, the trial court charged the jury over Ford's objection:

> A negligent failure to warn or recall claim may arise from a manufacturer's post-sale knowledge acquired months, years, or even decades after the date of the sale of the first of these products.
>
> In such cases, the duty to warn or recall arises whenever the manufacturer knows, or reasonably should know, of the danger arising from the use of the product.

The duty to warn or recall can arise even if the product is not defective but contains a danger or hazard that the manufacturer can anticipate.

On appeal, Ford maintains that the trial court committed reversible error by instructing the jury on a duty to recall when Georgia law does not impose such a general duty upon manufacturers. We apply the "plain legal error" standard of review in evaluating an allegedly erroneous jury instruction. *Horton v. Hendrix*, 291 Ga. App. 416, 418 (1) (662 SE2d 227) (2008). "In order for a trial court's jury instruction to constitute reversible error, the party challenging the instruction must establish that the instruction was both legally erroneous and harmful." *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 285 Ga. App. 22, 24 (1) (645 SE2d 536) (2007). Applying this standard, we agree with Ford that the trial court committed reversible error requiring a new trial.

(a) *The Jury Instruction Was Legally Erroneous.* The propriety of the jury instruction at issue here turns on the question of legal duty. "The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care. Whether a duty exists upon which liability can be based is a question of law." (Citation omitted.) *Holcomb v. Walden*, 270 Ga. App. 730, 731 (607 SE2d 893) (2004). In the absence of a legally cognizable duty, there can be no fault or negligence. *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 58 (13) (668 SE2d 737) (2008).

As an initial matter, we reject the plaintiffs' contention that the question of whether a manufacturer has a duty to recall a product was resolved by *Mack Trucks, Inc. v. Conkle*, 263 Ga. 539, 540-541 (1) (436 SE2d 635) (1993), and *Smith v. Ontario Sewing Machine Co.*, 249 Ga. App. 364, 368 (b) (548 SE2d 89) (2001). Although the plaintiffs in *Mack Trucks, Inc.* had brought a claim "for negligent failure to recall or warn," 263 Ga. at 539, there was no challenge or ruling on appeal as to the validity of that claim. Id. at 540-541 (1). Rather, the issue on appeal was whether a negligence claim for a defective product was a "product liability" cause of action under the punitive damages statute. Id. Likewise, while this Court in *Smith* purported to recognize a duty to recall, 249 Ga. App. at 368 (b), the Supreme Court of Georgia granted a writ of certiorari, expressly disapproved of this Court's resolution of that issue, and held that it was unnecessary for the Supreme Court to resolve the issue given the posture of the case, thereby acknowledging that the question of whether such a duty existed had not yet been decided by that Court. See *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 685-686 (1) (572 SE2d 533) (2002). Accordingly, the question of whether a

manufacturer has a duty to recall remains unsettled under Georgia law.[1]

We conclude that absent special circumstances,[2] no common law duty exists under Georgia law requiring a manufacturer to recall a product after the product has left the manufacturer's control. Under our products liability jurisprudence, a manufacturer's duty to implement alternative safer designs is limited to the time the product is manufactured, not months or years later when technology or knowledge may have changed. See *Banks v. ICI Americas*, 264 Ga. 732, 736 (1) (450 SE2d 671) (1994) ("[T]he trier of fact may consider evidence establishing that at the time the product was manufactured, an alternative design would have made the product safer than the original design and was a marketable reality and technologically feasible."). Any other rule would render a manufacturer a perpetual insurer of the safety of its products, contrary to established Georgia law. See id. at 737 (1) ("[A] manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury.").

It is true that Georgia law imposes a continuing duty upon manufacturers to warn of a danger arising from a product after its sale or distribution. See *Chrysler Corp. v. Batten*, 264 Ga. 723, 724-725 (1) (450 SE2d 208) (1994); *Wabash Metal Products v. AT Plastics Corp.*, 258 Ga. App. 884, 886 (1) (575 SE2d 683) (2002). But the continuing nature of that duty was expressly sanctioned by the General Assembly in OCGA § 51-1-11 (c), which specifically omits duty to warn claims from the statute of repose otherwise applicable

---

[1] The plaintiffs contend that we need not determine whether Georgia recognizes a separate, independent duty to recall because the trial court instructed the jury that a manufacturer has a duty to *"warn or* recall." (Emphasis supplied.) In effect, the plaintiffs contend that the addition of the words "or recall" in the instruction was mere surplusage. The plaintiffs' contention, however, is inconsistent with their own position at trial, where they presented expert testimony and argued before the jury that Ford had an affirmative duty to recall the Tempo seat but had negligently failed to do so. Furthermore, Ford argued before the jury that a warning would not have been feasible or practical under the circumstances of this case, and the trial court gave several additional instructions to the jury pertaining solely to the independent elements of a duty to warn claim. Under these circumstances, the jury could have concluded that even if devising a specific warning would have been infeasible and impractical, Ford should have recalled the Tempo seat and seatback. In other words, the jury could have found that Ford breached its duty to recall but not its duty to warn.

[2] For example, if a manufacturer chooses to recall a product voluntarily, Georgia law imposes a duty upon the manufacturer to exercise ordinary care in conducting the recall campaign. See *Ontario Sewing Machine Co.*, 275 Ga. at 686 (2), n. 8; *Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 198 (1) (375 SE2d 117) (1988); Restatement (Third) of Torts, Products Liability § 11 (a) (2). Other special circumstances may exist for imposing such a duty, such as where a federal or state statute or governmental agency requires the manufacturer to recall the product. See Restatement (Third) of Torts, Products Liability § 11 (a) (1). Here, however, the plaintiffs did not present any evidence that Ford had voluntarily instituted a recall of the Ford seat, that any statute or administrative regulation required a recall, or that any other special circumstances existed that warranted the imposition of a duty to recall.

to claims arising out of the sale of a defective product.[3] See *Chrysler Corp.*, 264 Ga. at 727 (4) (subsection (c) "reflects the legislature's recognition of the possibility that [the duty to warn] may not emerge until long after the statute of repose has extinguished any cause of action arising out of the product's sale"). As such, when the General Assembly intends for Georgia law to impose a continuing duty upon product manufacturers, it knows how to do so, and "[w]e must presume that its failure to do so [in this instance] was a matter of considered choice." (Citation and punctuation omitted.) *Inland Paperboard &c. v. Ga. Dept. of Revenue*, 274 Ga. App. 101, 104 (616 SE2d 873) (2005).

Other jurisdictions have similarly declined to place a continuing duty upon manufacturers to recall a product. See Lisa Anne Meyer, Products Liability: Manufacturer's Postsale Obligation to Modify, Repair, or Recall Product, 47 ALR 5th 395, § 2 (a) (1997) (compiling cases and concluding that "[t]he majority of courts refuse to extend upon the manufacturer the duty to repair or remedy its product postsale.").[4] Our conclusion likewise is supported by the Restatement (Third) of Torts: Products Liability § 11, which does not recognize a common law claim for negligent failure to recall, except in the special limited circumstance where a recall is specifically required by "a governmental directive issued pursuant to a statute or administrative regulation," id. § 11 (a) (1), or where the manufacturer voluntarily initiates a recall and performs it negligently. Id. § 11 (a) (2), (b).

Finally, important public policy concerns support our decision

---

[3] OCGA § 51-1-11 (c) provides:

The limitation . . . regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. *Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.*

(Emphasis supplied.)

[4] See, e.g., *Wallace v. Dorsey Trailers Southeast*, 849 F2d 341, 344 (II) (8th Cir. 1988); *Stanger v. Smith & Nephew, Inc.*, 401 FSupp.2d 974, 982 (E.D. Mo. 2005); *Eschenburg v. Navistar Intl. Transp. Corp.*, 829 FSupp. 210, 214-215 (II) (E.D. Mich. 1993); *Tabieros v. Clark Equip. Co.*, 944 P2d 1279, 1295-1301 (III) (A) (2) (Haw. 1997); *Modelski v. Navistar Intl. Transp. Corp.*, 707 NE2d 239, 247-248 (Ill. App. Ct. 1999); *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 861 P2d 1299, 1315-1316 (Kan. 1993); *Ostendorf v. Clark Equip. Co.*, 122 SW3d 530, 533-537 (Ky. 2003); *Gregory v. Cincinnati, Inc.*, 538 NW2d 325, 334-337 (III) (D)-(IV) (Mich. 1995).

not to impose a continuing duty to recall upon manufacturers.

> Because the cost of locating, recalling, and replacing mass-marketed products can be enormous and will likely be passed on to consumers in the form of higher prices, the recall power should not be exercised without extensive consideration of its economic impact. Courts, however, are constituted to define individual cases, and their inquiries are confined to the particular facts and arguments in the cases before them. Decisions to expand a manufacturer's post-sale duty beyond making reasonable efforts to warn product users about newly discovered dangers should be left to administrative agencies, which are better able to weigh the costs and benefits of such action.

(Footnotes omitted.) Victor Schwartz, The Post-Sale Duty to Warn: Two Unfortunate Forks in the Road to a Reasonable Doctrine, 58 N. Y. U. L. Rev. 892, 901 (I) (1983).

For these combined reasons, Georgia common law does not impose a continuing duty upon manufacturers to recall their products. It follows that the trial court's jury instruction to the contrary was legally erroneous.

(b) *The Jury Instruction Was Harmful.* "Here, the erroneous instruction did not merely draw the jurors away from the true issues in dispute, but actually authorized them to return a verdict in favor of [the plaintiffs] based on a legally invalid theory of recovery." *Hathaway v. Bishop*, 214 Ga. App. 870, 873 (3) (449 SE2d 318) (1994). The jury instruction imposing a duty to recall upon manufacturers thus was harmful error under the circumstances of this case. See id.

The plaintiffs, however, emphasize that they presented several alternative theories of recovery and that a general verdict form was utilized without objection by Ford. As such, the plaintiffs argue that we must presume that the jury found for them on their other claims and conclude that the erroneous recall instruction was harmless. We are unpersuaded. "In fact, the opposite of [the plaintiffs' argument] is true: since the jury found a general verdict for the plaintiff[s] against [Ford], the verdict cannot stand for the reason that this [C]ourt cannot determine whether the verdict was entered upon a proper basis." (Citation and punctuation omitted.) *Troncalli v. Jones*, 237 Ga. App. 10, 13 (1) (514 SE2d 478) (1999). See *Ga. Power Co. v. Busbin*, 242 Ga. 612, 616-617 (8) (250 SE2d 442) (1978).[5] Ford

---

[5] The plaintiffs' reliance upon *First Southern Bank v. C & F Svcs.*, 290 Ga. App. 305, 309

therefore is entitled to a new trial. See id.; *Lawyers Title Ins. Corp.*, 285 Ga. App. at 27 (1); *Hathaway*, 214 Ga. App. at 873 (3).

Ford's remaining enumerations of error are likely to recur during the retrial of the case. We will address them each in turn.

2. The trial court instructed the jury on joint and several liability and further instructed on causation in crashworthiness cases:

> If you find that the Plaintiffs have proved by a preponderance of the evidence that the automobile in question contained a design defect or defect due to inadequate warning that was a substantial factor in causing the Plaintiff's injuries to be more severe than they otherwise would have been from the accident or collision, then a manufacturer is liable and the Plaintiffs are entitled to recover, regardless of who was at fault in causing the accident or collision.

Ford argues that the jury instruction was incomplete and misleading under *Polston v. Boomershine Pontiac-GMC Truck*, 262 Ga. 616 (423 SE2d 659) (1992), the seminal case in which the Supreme Court of Georgia established the proper analysis for determining liability in crashworthiness cases. In *Polston*, the Supreme Court held:

> In an enhanced injury or crashworthiness case, Georgia law places on the plaintiff the burden of proving that a design defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision. To the extent that the injuries suffered by the plaintiff are indivisible, the defendants are treated as joint tortfeasors. Once the plaintiff's burden has been borne, the burden of proof shifts to the defendant which wishes to limit its liability to demonstrate a rational basis for apportioning the liability for the injuries.

Id. at 618-619. According to Ford, the trial court's jury instruction was incomplete because it did not inform the jury that Ford could limit its liability by demonstrating a rational basis for apportioning liability for Reese's injuries.

We are unpersuaded under the circumstances of this case. "Reversible error will not be found in the refusal of the trial court to give a charge which, while constituting a correct statement of an

---

(3) (659 SE2d 707) (2008), is misplaced. That case addressed errors premised upon the form of the verdict, not errors in a jury instruction. See id.

abstract principle of law, was not adjusted to the evidence introduced at trial." (Citation and punctuation omitted.) *Gates v. Navy*, 274 Ga. App. 180, 183 (3) (617 SE2d 163) (2005). The record reflects that Ford did not present any evidence to support a rational apportionment of liability for the injuries and death of Mary Reese. Ford's sole position throughout trial was that Reese sustained *no* injuries as a result of the Tempo seatback, but rather that *all* of her injuries and ultimately her death were caused by the dump truck hitting the rear of her car, which caused her car to go off the road and violently slam into the bottom of the steep embankment. Ford thus took an "all or nothing" approach to liability and made no effort to show how her injuries could be rationally apportioned between the collision with the dump truck and the alleged collapse of the Tempo seat. It follows that under the evidence presented at trial, Ford was either liable as a joint tortfeasor with the driver of the dump truck, or not liable at all. See *Polston*, 262 Ga. at 618. Consequently, the trial court properly instructed the jury on the crashworthiness doctrine as adjusted to the specific facts of this case. See *Gates*, 274 Ga. App. at 183 (3); *Campbell v. Cozad*, 207 Ga. App. 175 (1) (427 SE2d 515) (1993).

3. Ford next contends that the trial court erred in permitting the plaintiffs to introduce complaints from other lawsuits against Ford to establish notice of the alleged defect in the Tempo seatback. According to Ford, the complaints should have been excluded as irrelevant because the plaintiffs failed to establish that the other incidents were substantially similar to the incident at issue in this case.[6] We disagree.

"In product liability actions, evidence of other incidents involving the product is admissible, and relevant to the issues of notice of a defect . . . , provided there is a showing of substantial similarity." (Citations and punctuation omitted.) *Ray v. Ford Motor Co.*, 237 Ga. App. 316, 317 (1) (514 SE2d 227) (1999). See *Cooper Tire & Rubber Co. v. Crosby*, 273 Ga. 454, 455-456 (1) (543 SE2d 21) (2001). In order

---

[6] Ford also asserts that the complaints were inadmissible hearsay. We do not agree because the complaints were offered for the limited purpose of proving Ford's knowledge or notice of the product defect. See *A.A.L., Inc. v. Colonial Pipeline Co.*, 280 Ga. App. 237, 239 (1) (c) (633 SE2d 560) (2006); *Quiktrip Corp. v. Childs*, 220 Ga. App. 463, 466 (3) (469 SE2d 763) (1996). See also *Benford v. Richards Med. Co.*, 792 F2d 1537, 1540 (II) (B) (2) (11th Cir. 1986).

Ford further asserts that the trial court erroneously allowed the introduction of evidence of the other incidents without first finding that the incidents met the substantial similarity test. Nothing in the record indicates that the trial court failed to consider and resolve the substantial similarity issue when it ruled on the admissibility of the complaints at the hearing on Ford's motion in limine, after the court had heard argument from the parties and had received written briefs from both parties on the issue. See generally *Davis v. Bushnell*, 245 Ga. App. 221, 223 (537 SE2d 477) (2000) ("[I]n the absence of a contrary showing, the trial court will be presumed to have followed the law.") (footnote omitted).

to show substantial similarity, the plaintiff must come forward with evidence (1) that the products involved in the other incidents and the present incident shared a common design and manufacturing process; (2) that the products suffered from a common defect; and (3) that any common defects shared the same causation. Id. at 456 (1). "Absent clear abuse, the trial court['s] exercise of discretion in admitting or refusing to admit such evidence is entitled to deference." Id. at 457 (2).

In its discovery responses introduced at trial in the form of a stipulation, Ford admitted that the other incidents involved a Ford vehicle, a rear impact collision, and a seatback that deformed in the accident. The testimony of two Ford engineers, as well as that of the plaintiffs' seat design expert, showed that the other incidents involved Ford seatbacks with the same design as the Tempo seatback at issue here. Additionally, the plaintiffs presented expert testimony that Ford seatbacks with that shared design structurally collapse backward in rear impact collisions. Immediately following admission of the complaints from other incidents and again in its final charge to the jury, the trial court gave a limiting instruction to clarify that the complaints were admitted solely for the purpose of showing Ford's knowledge or notice of the alleged product defect and dangers.

In light of the expert testimony and Ford's own admissions, we cannot say that the trial court abused its discretion in ruling that the other incidents met the substantial similarity test and in admitting the complaints to show Ford had knowledge or notice of the alleged seat defect. See *Hunter v. Werner Co.*, 258 Ga. App. 379, 385-386 (2) (574 SE2d 426) (2002) (evidence of prior lawsuits involving similar allegations of side rail fracture, combined with other evidence, created genuine issue of material fact over whether defendant had sufficient knowledge requiring it to issue warning to customers); *Mack Trucks, Inc.*, 263 Ga. at 544 (3) (trial court did not abuse its discretion in admitting evidence of similar complaints regarding a defect in the truck frame for purposes of showing the defendant's notice of the defect). In reaching this conclusion, we are in accord with other jurisdictions that likewise have admitted evidence of other incidents in crashworthiness cases against Ford involving the alleged collapse of a seatback in a rear impact collision. See, e.g., *Carrillo v. Ford Motor Co.*, 759 NE2d 99, 108-109 (Ill. App. Ct. 2001); *Newman v. Ford Motor Co.*, 975 SW2d 147, 151-152 (Mo. 1998).

Ford separately argues that the trial court abused its discretion in excluding certain responsive documents and testimony that it attempted to introduce to address the evidence of other incidents introduced by the plaintiffs. But Ford did not make a proffer of the documents and testimony when the trial court ruled that they were inadmissible. Then, after trial, Ford moved to supplement the record

with the documents, but the trial court denied the motion, and Ford has not enumerated that ruling as error on appeal. The burden is upon Ford to show error affirmatively by the record. *Kmart Corp. v. Merriweather*, 254 Ga. App. 13, 14 (561 SE2d 181) (2002). "In the absence of a sufficient record, we must assume that the trial court's ruling was proper" and affirm the trial court on the evidentiary issue. *Steele v. Atlanta Maternal-Fetal Medicine*, 283 Ga. App. 274, 277 (2) (641 SE2d 257) (2007). See *Kmart Corp.*, 254 Ga. App. at 14-15.

4. Lastly, Ford maintains that the trial court erred by admitting deposition testimony of the plaintiffs in five of the other lawsuits concerning the injuries they or their children suffered. According to Ford, testimony concerning those injuries was irrelevant and unfairly prejudicial. Again, we disagree.

> As to relevance, it has been often stated that, unless the potential for prejudice in the admission of evidence substantially outweighs its probative value[,] the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it.

(Citation and footnote omitted.) *Byrne v. Fierman*, 256 Ga. App. 443 (1) (568 SE2d 494) (2002). Moreover, the fact that relevant evidence "tends to damage or impair the cause of the party against whom it is being introduced" is insufficient to justify its exclusion. *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 339 (4) (319 SE2d 470) (1984). See Paul S. Milich, Georgia Rules of Evidence § 6.4, p. 72 (2d ed. 2002) ("Evidence admitted for a legitimate purpose might be quite prejudicial to a party but that does not constitute grounds for rejecting the evidence."). The determination of whether evidence is admissible under this standard is left to the sound discretion of the trial court. *Wolf Camera v. Royter*, 253 Ga. App. 254, 261 (4) (558 SE2d 797) (2002).

The trial court did not abuse its discretion in finding that the probative value of witness testimony concerning the injuries received in Ford seats with the same design under similar circumstances was not substantially outweighed by the risk of unfair prejudice. The testimony was probative to the risk-utility analysis applicable in product liability cases, under which the jury may consider "the gravity and severity of the danger posed by the design." *Banks*, 264 Ga. at 736 (1), n. 6. And the deposition testimony concerning injuries to children, arguably the most potentially prejudicial of the deposi-

tion testimony, was edited to remove several pages of descriptions of injury. Testimony regarding injuries, moreover, made up only one part of the five plaintiffs' testimony concerning the other incidents, and only a small portion of the twelve-day jury trial. Under these circumstances, the trial court committed no error in admitting the deposition testimony. See generally *Stubblefield*, 171 Ga. App. at 339 (4) (concluding that evidence of other transactions and occurrences in products liability case was not unduly prejudicial).

*Judgment reversed and case remanded. Smith, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 16, 2009

*Owen, Gleaton, Egan, Jones & Sweeney, Philippa V. Ellis, Derrick L. Bingham*, for appellant.

*Daughtery, Crawford, Fuller & Brown, Peter J. Daughtery, Dustin T. Brown, Peter A. Law, Ernest M. Moran, Albert H. Dallas*, for appellee.